## Thomas Johnson *vs.* Edwin M. Johnson.

*Covenant—Specific performance—Concurrent remedy at law and in Equity — Charge on Lands by implication—Agreement to pay money out of the proceeds of Sale of land held to be a charge on the land itself, Enforcible in Equity by a Sale— "Reasonable Time."*

It does not necessarily follow, because a covenant creates a personal obligation on the covenantor which may be sued on at law, that there may not be also an equitable lien or charge created at the same time.

If a man has power to charge his lands and agrees to charge them, in Equity he has actually charged them; and a Court of Equity will execute the charge.

A charge may be created by a fair and reasonable implication, as well as where express words of trust or charge, are employed in the covenant or agreement of the parties.

T. J. claiming title to land, of which E. M. J. was in possession under an adverse claim, advertised the same for sale. E. M. J. filed a bill for an injunction to restrain the sale. Afterwards the matter was compromised by a written agreement between them under seal, by which it was witnessed, "that the said T. doth hereby promise and obligate himself to pay to the said E. M. J., the sum of $2500, in full consideration of all claims or demands whatsoever against the said T. J. The following payments to be made, namely: $500 on or before the expiration of thirty days from the date hereof, and $1000 *out of the first payment made on the sale of the form, Harmony Grove, and $1000 out of the second payment on said farm.* On the part of the said E. M. J., he promises," &c. T. J. paid the first instalment of $500, but failed to pay the balance or to sell the land. On a bill filed against him by E. M. J., to enforce the execution of the above agreement by a sale, it was Held :

1st. That the agreement must be taken as having created a charge upon the land, and raised a trust in respect thereto, as security for the payment of the plaintiff's debt, and hence he had the right upon failure of the defendant, to

perform the trust, to have that trust specifically executed by a decree of a Court of Equity.

2nd, That the money agreed to be paid the plaintiff, out of the proceeds of the sale of the farm, became due and payable after the lapse of a reasonable time, within which the farm could have been fairly sold, and the proceeds of sale realized by the defendant, on the usual and ordinary terms of sale.

3rd. That there was no error in the appointment by the Court below, of a trustee to make the sale asked for in the bill, instead of requiring the defendant himself to make it in execution of the contract.

APPEAL from the Circuit Court for Frederick County, in Equity.

The appeal in this case was taken by the defendant below from a decree for the sale of certain lands by a trustee appointed by the decree, on a bill filed by the complainant for the specific execution of the following agreement:

Articles of agreement entered into this 6th day of April, 1868, between Thomas Johnson, of Frederick county, Maryland, of the one part, and Edwin M. Johnson, of said county and State, of the other part: Witnesseth, that the said Thomas doth hereby promise and obligate himself to pay the said Edwin M. Johnson the sum of two thousand five hundred dollars, in full consideration of all claims or demands whatsoever against the said Thomas Johnson. The following payments to be made, namely: five hundred dollars, on or before the expiration of thirty days from the date hereof, and one thousand dollars out of the first payment made on the sale of the farm, Harmony Grove, and one thousand dollars out of the second payment on said farm. On the part of the said Edwin M. Johnson, he promises to give the said Thomas Johnson immediate possession of the dwelling-house and farm, or from the date hereof. Also full and complete possession of all the personal property belonging to the late William Cost Johnson, embracing all the curiosities and other valuables, excepting a double-

barreled gun, Mexican saddle, fishing rod and quartz-head cane. In witness whereof, we have hereunto affixed our hands and seals, the day and year above mentioned.

THOMAS JOHNSON, [Seal.]

EDWIN M. JOHNSON, [Seal.]

Witness:—*Abraham Hemp.*

The facts of the case are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*William J. Ross,* for the appellant.

There are but two points in this cause:

1st. Had the appellee an adequate remedy in a Court of law? If he had, he had no remedy in a Court of equity, and such defence may be availed of either by plea, demurrer or at the final hearing. *Drury vs. Conner,* 1 *Harris & Gill,* 220.

As covenantee under the agreement he has a full remedy at law by action of covenant or debt, and there is no statement in the bill showing such a state of circumstances as would justify application to a Court of Equity. The allegation in the bill that the two sums of one thousand dollars each are liens, do not constitute these sums liens. The fact of the lien must exist inherently, arising out of the transaction.

2nd. Does the agreement that the sum of one thousand dollars should be paid out of the first payment, and the further sum of one thousand dollars out of the second payment, constitute a lien, or is it a mere covenant?

It is not a vendor's lien, because the appellee was not the owner of the real or personal estate. It is not a legal mortgage, because not executed according to the provi-

sions of Article 24, Code of Public General Laws, entitled " Conveyancing."

Does the agreement constitute an equitable mortgage?

The covenant must be interpreted by its terms; to pay one-thousand dollars out of the first payment on the sale of the Harmony Grove farm, and one thousand dollars out of the second payment on the sale of the said farm.

The agreement does not covenant to appropriate the Harmony Grove tract to the payment of the sums of one thousand dollars each; but when sold, the terms of sale being indefinite, the appellant covenants to pay the sums of money out of the proceeds of the first and second payments. A general indefinite engagement by a debtor, though by deed with his creditors that if he does not discharge his debts by a certain time, he will sell so much of his lands as shall be requisite, does not give the creditors any *lien* so as to entitle them to come in *pari passu* with judgment creditors in the administration of assets. *Berrington vs. Evans*, 3 *Y. & Coll.*, 384.

The covenant by the appellant was to pay the appellee two thousand five hundred dollars, and the mode of payment is designated by the contract.

But even admitting that the complainant has a remedy in a Court of Equity, the objection is made that the remedy administered by the Court is not the proper remedy. If this contract be enforced in Equity, it must be enforced according to the contract itself. The decree is neither in conformity to the bill nor to the contract exhibited and proven, in the appointment of a trustee to sell the lands which the appellant, according to the theory of the case, was compelled to sell and failed to do so.

In *Triebert vs. Burgess, et al.*, 11 *Md.*, 452, the order was reversed because it did not conform to the agreement. So in this case the decree is variant from the agreement, which is a mere covenant to pay out of the proceeds of sale of certain lands, at times not specified.

If the sale of the lands be improperly delayed, the sale may be accelerated by a decree of the Court, to be made by the appellant, and not by a stranger.

*John Ritchie,* for the appellee.

As to the main question involved it is evident that the debt of two thousand dollars is a charge upon the aforesaid land, and that a trust was created by the said agreement to sell the same and to apply the proceeds of the sale in discharge of the debt.

If the appellee had proceeded at law, it would have been pleaded, that the amount was not due till a sale of the land, for which no certain time was fixed, and was only payable when such a sale was effected; and that it was a case of constructive trust. Besides at law, the appellee would have lost the special security for which he had contracted. At all events, the nature of the agreement and the attendant circumstances warranted the interposition of a Court of Equity.

"If a party has succeeded in proving a contract, and in showing that it had been in part performed, he is entitled to have it specifically executed." *Owings vs. Baldwin and Wheeler,* 1 *Md. Ch. Dec.,* 122.

In the case of *Sullivan, et al. vs. Tuck, Ex'cr of Bowie,* 1 *Md. Ch. Dec.,* 59, the Court of Chancery enforced a contract where the crops on hand and growing crops of a planter had been pledged to pay advances made to him by his commission merchant. See *Smoot, et al. vs. Rea and Andrews,* 19 *Md.,* 398.

On the point of no time being fixed for the performance the same principle applies as when no time is specified where payment is to be made of a debt secured by mortgage—a "reasonable time" is implied. *Farrell vs. Bean,* 10 *Md.,* 233; *Triebert vs. Burgess,* 11 *Md.,* 463.

As to the appellant's objection, that the Court appointed a trustee to make the sale, it may be replied that the

appellant having improperly neglected and refused to perform the trust, he was unworthy to sustain the relation of confidence implied in a trusteeship, and was rightly superseded; but this substitution was only to take effect after ample opportunity afforded by the decree to bring in the money.

Courts of Equity will not permit a trust to fail from want of a trustee, and by inherent power will provide the proper instruments to effectuate trusts and carry out their decrees. *Hill on Trustees*, 270.

Surely, equity will intervene, after the appellee has lost possession of the land on the faith of the appellant's obligation, and when all parts of the agreement have been performed, except the engagement of the appellant to make sale of the farm, and apply the proceeds in discharge of the balance due. The appellant will have otherwise consummated a fraud of the grossest character.

Finally, if the relief granted, or the method pursued, be defective, it is competent for the Court of Appeals to so rectify the decree below, that equity may be done.

ALVEY, J., delivered the opinion of the Court.

The late William Cost Johnson, by deed of the 14th of June, 1859, conveyed all his real and personal estate in Frederick County to the defendant in this cause, Thomas Johnson; the real estate consisting of a farm called "Harmony Grove." William Cost Johnson died in 1860; and for several years prior to his death, and up to April, 1868, the plaintiff, Edwin M. Johnson, occupied the farm; and after the death of his uncle, William Cost Johnson, he set up claim to the right of possession of the farm in respect of some pecuniary claims against his uncle, and also against his father, the defendant, who demanded possession of the farm by virtue of his title under the deed of the 14th of June, 1859. The defendant had advertised the farm for sale on the 21st of March, 1868, and the plaintiff filed his

bill in equity in the Circuit Court for Frederick County, for an injunction to restrain such sale, and for a decree that the land be sold under the direction of the Court for the satisfaction of his claims. In this state of contention in regard to the farm, the plaintiff and defendant entered into the agreement of the 6th of April, 1868, under their respective hands and seals. By this agreement the defendant promised and obligated himself to pay to the plaintiff the sum of two thousand five hundred dollars, in full satisfaction of all claims or demands whatever against him, the defendant; such sum to be paid in a specified manner, namely: Five hundred dollars on or before the expiration of thirty days from the date of the agreement; one thousand dollars out of the first payment made on the sale of the farm, "Harmony Grove;" and the other thousand dollars out of the second payment on said farm. The plaintiff, on his part, promised to give up and surrender to the defendant the immediate possession of the farm, and also all the personal property held by him which had belonged to the late William Cost Johnson, with certain specified exceptions. This covenant on the part of the plaintiff has been performed, but the defendant has only paid the first instalment of five hundred dollars, of the sum agreed to be paid by him, and has wholly neglected or failed to pay the other two thousand dollars, and has neglected or refused to sell the farm to raise the fund with which to discharge his obligation. It is on these facts that the plaintiff has filed his bill in this case, asking an enforcement of the defendant's covenant as a charge or lien on the land, and, in that view, praying that the farm be decreed to be sold to raise the fund to pay off the amount due from the defendant on his covenant. The Court below decreed in favor of the plaintiff; and the first and most material question on this appeal is, whether the covenant creates a charge or lien, in the sense of a Court of Equity, that can be enforced in the manner contemplated by the plaintiff's bill?

It is objected that the covenant creates only a personal obligation on the defendant, and that, consequently, there is no jurisdiction in a Court of Equity to take cognizance of the case.   If this were a mere personal covenant, and nothing more, the objection just stated would certainly be well founded.   But that is not our conclusion as to the nature of the covenant.   That the covenant does create a personal obligation on the defendant is doubtless true, and one that could be sued on at law; but it does not necessarily follow from that being so, that there may not be also an equitable lien or charge created at the same time.   The covenant does not, as may be observed, stipulate in express terms that the land shall be sold and the proceeds of sale applied to the discharge of this particular debt.   But we think that is the fair and reasonable implication from the terms employed.   In a case like the present, the question whether there has been a charge created depends in a great measure upon the intention of the contracting parties; and here we think it manifest, as well from the language of the covenant itself as from the circumstances leading to it and under which it was made, that the parties contemplated the sale of the farm, and the proceeds of sale as the fund from which the debt was to be paid.   In other words, the farm was to be sold, and a sufficient amount of the purchase money specifically appropriated to the payment of the debt due the plaintiff.   If such be the fair construction of the agreement, it created a charge on the land as a security to the plaintiff; for, as was said by Chancellor Sugden, in *Rolleston vs. Morton*, 1 *Dr. & W.*, 195, if a man has power to charge his lands, and agrees to charge them, in equity he has actually charged them; and a Court of Equity will execute the charge.   Here, as we have seen, there are no express words creating the lien or charge upon the land; but there is no doubt of the proposition, that a charge may be created by fair and reasonable implication as well as where express words of trust or charge are em-

ployed in the covenant or agreement of the parties. *Perry on Trusts*, sec. 122, and authorities there cited; and 2 *Story's Eq. Jur.*, sec. 1246.

This case in principle does not differ from that of *Legard vs. Hodges*, 1 *Ves., Jr.*, 477, and same case on rehearing, 4 *Bro. C. C.*, 421. There, a party having obligated himself to pay a certain sum for a particular purpose, as means of raising that sum, covenanted with trustees that he would set apart and pay to such trustees one-third part of the annual profits of his particular estates; and failing to make the application of the profits according to the covenant, and having appropriated them to other purposes, the trustees filed their bill to have a trust declared as to the third of the profits of the land; and although it was there contended, as it has been contended here, that there was no lien upon the land, but a mere personal covenant only, it was held, that the covenant created in equity a lien on the land against the covenantor, and those claiming under him with notice. And, in deciding the case, the Lord Chancellor said that there was a maxim which he took to be universal, and that was, wherever persons agreed concerning any particular subject, that in a Court of Equity, as against the party himself, and any claiming under him voluntarily or with notice, raised a trust. To the same effect is the doctrine fully stated by Mr. Justice STORY, *Eq. Juris.*, sec. 1231. He there says: "Indeed, there is generally no difficulty in equity in establishing a lien, not only on real estate but on personal property, or on money in the hands of a third person, wherever that is matter of agreement, at least against the party himself, and third persons, who are volunteers, or have notice. For it is a general principle in equity, that, as against the party himself, and any claiming under him, voluntarily, or with notice, such an agreement raises a trust." See also *Power vs. Bailey*, 1 *Ball & Beat.*, 52. And such being the well established principle upon the

subject, the agreement in this case must be taken as having created a charge upon the land, and raised a trust in respect thereto, as security for the payment of the plaintiff's debt; and hence it is the right of the latter, upon failure of the defendant to perform the trust, to have that trust specifically executed by a decree of a Court of Equity.

The case of *Berrington vs. Evans,* 3 *Y. & Coll.,* 384, relied on by the defendant, is not an authority to affect this case. There the covenant was that if the covenantor did not pay certain debts by a given day, he engaged to sell so much of his estates as might be necessary for that purpose. The learned Baron of the Exchequer, who decided the case, said that it did not appear to him that the covenant was anything more than a personal undertaking; but if it were, the case of *Williams vs. Lucas,* 1 *P. Wms.,* 430, *n.,* shewed that the words of it were too general to create a specific lien upon the lands of the covenantor. This latter reason was all-sufficient for the case, for it was expressly decided in the case referred to in *P. Wms.,* and also in the case of *Freemoult vs. Dedire,* 1 *P. Wms.,* 429, that a covenant to mortgage or settle lands to secure sums of money, without mentioning or referring to any certain lands, was not sufficient to create any specific lien; and as the covenant in the case of *Berrington vs. Evans,* according to the construction of the learned Judge, referred to no particular lands or estates, it created no specific lien, and hence it could be nothing more than a mere personal undertaking. That case, therefore, can have no application to this, even conceding it to have been well decided; a proposition in regard to which we express no opinion, in view of what was held in the case of *Wellesley vs. Wellesley,* 4 *My. & Cr.,* 561. See *Mornington vs. Keane,* 2 *De G. & J.,* 293.

It is thought that, as the covenant fails to fix any definite time for the payment of the money, or to designate any time within which the farm should be sold, or how to be sold, the defendant was left free to exercise his discretion

as to the time and mode of sale, and that a Court of Equity cannot enforce the sale to be made, as by so doing the defendant would be deprived of a discretionary right of which he was not deprived by the agreement.

But, in reply to this suggestion, it is sufficient to say, that there is no such want of certainty and definiteness in the agreement as to prevent its execution by the Court; and as it is alleged and proved that the defendant, although repeatedly requested, has utterly neglected and refused to sell the farm, but retains it for his own profit, and as a reasonable time had elapsed before filing the bill, a Court of Equity, under such circumstances, will not permit him, under the pretence of exercising a discretion as to the time and manner of sale, to evade the performance of his contract. *Wellesley vs. Wellesley,* 4 My. & Cr., 579.

The money agreed to be paid the plaintiff out of the proceeds of sale of the farm became due and payable after the lapse of a reasonable time, within which the farm could have been fairly sold, and the proceeds of sale realized by the defendant on the usual and ordinary terms of sale; *Farrell vs. Bean,* 10 *Md.,* 233; *Triebert vs. Burgess,* 11 *Md.,* 452; and this time having expired, and the defendant failing to show any good reason why he has not performed his contract, the land has become liable to be proceeded against for the enforcement of the charge on it.

Another objection to the decree of the Court below is, that, instead of appointing a trustee to make the sale, it should have required the defendant, himself, to make the sale in execution of the contract. This objection we do not regard as well founded. The defendant, by his own neglect or refusal to perform his contract, has occasioned the present application for relief, and as the Court proceeds with the matter upon the footing of a trust, it is quite competent to it, in order to make its relief effectual, to appoint an officer of its own to execute its decree. The defendant has been allowed ample time for the sale of the farm or the

payment of the money due the plaintiff; and if he does not desire the farm to be sold, he may still avoid that alternative by payment of the money without further delay.

The decree appealed from will be affirmed, and the cause remanded that the decree may be executed.

*Decree affirmed, and*
*cause remanded.*

(Decided 14th May, 1874.)