In the Matter of Charles F. LAMBERT, Jr., Bankrupt.

BENEFICIAL FINANCE CO. OF MICHIGAN, a Delaware corporation, Plaintiff,

v.

Charles F. LAMBERT, Jr., Defendant.

Bankruptcy No. 79–92706–B.

United States Bankruptcy Court, E. D. Michigan.

May 9, 1980.

John A. Dent, Pontiac, Mich., for plaintiff.

Erwin A. Salisbury, Ann Arbor, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This is an action instituted to determine the dischargeability status of a debt alleged to be nondischargeable under section 17(a)(2) of the Bankruptcy Act of 1898, as amended.

On April 2, 1979, Charles F. Lambert, Jr. (hereinafter referred to as the "bankrupt") had an outstanding loan balance with the Monroe branch office of Beneficial Finance Co. of Michigan (hereinafter referred to as "Beneficial"), in the amount of $500.00. On the same date, the bankrupt applied for, and was granted, an additional $2,500.00 loan. On August 21, 1979, the bankrupt filed a petition in bankruptcy. At that time, he was indebted to Beneficial in the amount of $2,500.00. Beneficial filed a complaint on November 20, 1979 to have this debt excepted from discharge under section 17(a)(2) of the Bankruptcy Act.

Beneficial contends that in applying for the $2,500.00 loan, the bankrupt submitted a written credit statement and made certain oral representations, that the credit statement and the representations were materially false, that the bankrupt submitted the credit statement and made the representations with an intent to deceive Beneficial, and that Beneficial relied upon both as a basis for granting the loan and, therefore, the $2,500.00 loan made to the bankrupt on April 2nd is nondischargeable pursuant to section 17(a)(2) of the Bankruptcy Act.

Section 17(a)(2) of the Bankruptcy Act provides in pertinent part, that

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive...."

Exceptions to discharge are to be strictly construed in favor of the bankrupt. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). The burden of establishing that a debt is subject to a statutory exception is on the creditor. To prevail in a section 17(a)(2) action, a creditor must establish that

"... (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967). See also *In re Houtman,* 568 F.2d 651 (9th Cir. 1978); *In re Taylor,* 514 F.2d 1370 (9th Cir. 1975).

It is in light of these criteria that the facts surrounding the granting of the April 2nd loan must be evaluated.

■■■ The bankrupt was required to submit a credit statement relating to his financial condition, allegedly so that Beneficial could determine whether or not to grant the loan. The bankrupt's credit statement represented that he was indebted to seven (7) creditors in the amount of $7,400.00, and that he was making monthly payments of $512.00 on these debts. Beneficial contends that the credit statement was materially false in that it failed to list debts owed to six (6) additional creditors—Government Employees Financial Corporation, Ann Arbor Co-op Credit Union, the Ypsilanti branch office of Beneficial, his mother and brother, and the First National Bank of Monroe—in an amount in excess of $6,000.00. In addition, Beneficial maintains that the bankrupt orally represented that he was building a home which was soon to be completed and which he would own free of any encumbrances, and that he would use the proceeds of the loan that would be turned over to him after certain designated creditors were paid by Beneficial, to discharge an indebtedness to Sears, Roebuck and Company (hereinafter referred to as "Sears"), but that the bankrupt, in fact, was not building a home and did not use any part of the proceeds of the loan that he received to discharge the Sears indebtedness.

The initial question to be decided is whether the credit statement was false. The bankrupt was not indebted to the Government Employees Financial Corporation as of April 2, 1979. He had applied for a loan to the Government Employees Financial Corporation, but the loan had not been approved prior to the submission of the credit statement. A statement which is true when submitted, will not constitute a false representation because of a subsequent change in the debtor's affairs, unless the debtor has a duty to inform the creditor of a change in his status. *Gregory v. Pierce,* 186 Iowa 151, 172 N.W. 288 (1919). There was no such duty imposed upon the bankrupt here. However, the bankrupt did omit existing debts to Ann Arbor Co-op Credit Union, the Ypsilanti branch office of Beneficial, his mother and brother and the First National Bank of Monroe. Thus, the statement that the bankrupt submitted was materially false. It becomes necessary, therefore, to determine whether the credit statement was submitted with intent to deceive Beneficial and whether Beneficial relied upon the statement to its detriment.

The bankrupt was not the primary obligee on the debt to Ann Arbor Co-op Credit Union. He was merely a cosigner for his sister. The bankrupt testified that since his sister was current in her payments, he did not believe that he was indebted to the credit union at the time he obtained the loan from Beneficial. If a debtor honestly believes that he is not indebted to a creditor, omitting such debt from a credit statement does not constitute intent to deceive. *Underwood v. Ajax Rubber Co.,* 296 S.W. 964 (Tex.Civ.App.1927). Nor does the omission of the obligation to the Ypsilanti branch office of Beneficial constitute fraud since the bankrupt testified that he assumed that Beneficial was aware of the prior loan and that it was, therefore, unnecessary for him to list this obligation. This assumption was reasonable, and satisfactorily explains the omission of this debt.

Trial testimony established that the bankrupt owed his mother and brother $250.00 and $200.00, respectively, at the time of the April 2nd loan. The bankrupt was not asked the reason, if any, for his failure to list his mother and brother as

creditors in the credit statement. However, the failure to list them, based upon the entire record, does not evidence an intent to deceive Beneficial. Relatives are almost never listed as creditors by bankrupts in their schedules and loan applications. Such personal obligations are apparently simply not considered to be debts in the commercial sense. It is inconceivable that the bankrupt omitted these family obligations in the belief that had they been disclosed, the loan would not have been granted.

The bankrupt was unable to explain why he failed to list a debt to the First National Bank of Monroe in the amount of $487.00. The bankrupt did list two (2) other large debts to the First National Bank of Monroe in the amounts of $5,200.00 and $2,200.00. The failure to list the third smaller debt, in light of the factual circumstances here presented, is probably attributable to mere inadvertence rather than an intent to deceive Beneficial. The bankrupt and his wife visited the Monroe branch office of Beneficial on April 2, 1979, and during this visit, the financial statement was filled out by the bankrupt's wife, signed by the bankrupt, and the loan was approved. It is readily evident that under such circumstances, a debtor may fail to recall all of his obligations.

> "(99 out of 100 financial statements are false in some respect, as most every person on a 'quick fill-out' will not have the power of recall of every debt).... The borrowers are dealing with people they don't know, signing contracts they don't understand, buying goods they don't need or to forestall a pending disaster, with money they haven't got. Under these circumstances, the loan managers have the positive obligation to prove that the bankrupts were thoroughly informed, on the 'facts of life', as it were, prior to the filling out of the so-called financial statement, if they are to prove an intent to deceive on the part of the borrowing bankrupt." *In re Gabriel*, 2 B.C.D. 128, 132 (W.D.Mo.1976).

If a finance company intends to charge that omissions of debts from a credit statement are attributable to an intent to defraud, a reasonable opportunity must be afforded prospective borrowers to ascertain the accuracy and completeness of the information supplied. To require a prospective borrower to proffer a list of existing debts without giving him an opportunity to verify its accuracy, compels the conclusion that the statement was obtained "without any serious intent to rely thereon but merely for the purpose of contesting a possible subsequent discharge in bankruptcy." *Cash Finance Service, Inc. v. Haisch*, 173 So.2d 851, 854 (La.App.1965).

When Beneficial approved the loan, it was aware that the bankrupt had not listed his indebtedness to Sears on the credit statement. Since Beneficial knew that it was accepting a false statement, it cannot now claim that it relied upon such statement. A creditor does not have

> "... the power to determine subjectively that he could rely on a financial statement that he knew contained only a little lie, but then give him the discretion to object to a creditor's (sic) debtor's discharge if the falsehood was subsequently determined to be of such magnitude that had he known the full falsehood he would not have extended the credit.... This principle is applicable, however false and dishonest the representations may be, and regardless of the fact that they are made with intent to deceive." *First Credit Corp. v. Behrend*, 45 Wis.2d 243, 172 N.W.2d 668, 671–672 (1969).

Moreover, the credit statement that the bankrupt signed advised him that if he knowingly gave a false statement regarding his credit and the lender relied on it, the obligation is nondischargeable in bankruptcy. Beneficial by knowingly accepting a false statement was, in effect, setting a "trap which afforded a perfect paper record on which to circumvent discharge if the debtor defaulted." *Swint v. Robins Federal Credit Union*, 415 F.2d 179, 184 (5th Cir. 1969). The purpose of the discharge provisions and the policy behind them are not served by such self-dealing. *Swint v. Robins Federal Credit Union, supra.* The bankrupt had enjoyed a satisfactory relationship

with Beneficial over a period of years. From 1972 until he filed his petition in bankruptcy, the bankrupt had obtained twelve (12) loans from Beneficial. It is reasonable to assume that the April 2nd loan was granted to the bankrupt, not in reliance upon the credit statement, but in reliance upon this pre-existing relationship.[1]

The record discloses additional support for this conclusion. The manager of the Monroe branch office of Beneficial testified that Beneficial makes loans to consumers on the basis of a 50% ratio between the total monthly payments and monthly take-home pay of the borrower. The April 2nd loan was granted to the bankrupt despite the fact that his monthly payment on his obligation to Beneficial by virtue of that loan and his monthly payments on other remaining debts, would exceed 50% of his take-home pay. The manager testified that she did not adhere to the guideline in deciding to grant the April 2nd loan because the bankrupt allegedly represented that he was building a home which was soon to be completed and which he would own free of any encumbrances. Beneficial did not introduce any evidence to establish that this representation was made, and the bankrupt denied making it. The more plausible explanation for the authorization of the loan in excess of the established guideline is that Beneficial relied upon the fact that the bankrupt had been a satisfactory credit risk over an extended period of time, and not upon an alleged representation of property ownership.

The court finds that the bankrupt did not submit a materially false credit statement with the purpose and intention of deceiving Beneficial, and that the credit statement was not relied upon by Beneficial. Additionally, the court finds that the bankrupt did not make any representation with respect to home ownership.

All that remains to be considered is whether the failure of the bankrupt to discharge the Sears indebtedness with the loan proceeds that he received, constitutes fraud. An action in fraud must ordinarily be predicated upon false statements relating to present or pre-existing facts and not upon false promises with respect to future acts. However, "fraud may be predicated upon a promise to do something in the future where the promisor upon the strength of his promise receives something of value and the promisor when making the promise has no intention of ever performing." *Frey v. Frankel*, 443 F.2d 1240, 1243 (10th Cir. 1971). There is no evidence to support a conclusion that the bankrupt did not intend to discharge the Sears indebtedness with the proceeds of the loan that he would receive, at the time he made the representation. The credit statement indicated that he intended to use the proceeds of the loan to pay four (4) designated existing creditors: Town Finance, Michigan Bankard, Master Charge and Visa. The credit statement, however, did not indicate how much the bankrupt actually owed to three (3) of these creditors. Apparently, the bankrupt did not know how much he owed to Michigan Bankard, Master Charge, Visa or Sears. Beneficial, after approving the loan, determined the amount due to each of these creditors, other than Sears, and made payments directly to them. It then turned over $402.00, representing the balance of the $2,500.00 loan, to the bank-

---

1. Professor Schuchman, in an analysis of a typical consumer credit transaction in his study of bankruptcy, comments as follows:

"The prospects of reliance change from the initial loan to the extension of credit to a previous borrower. The credit report giving the experience of others may be important at the time of the first loan, but the lender's own repayment experience is apt to be decisive in the subsequent loans. The same is true of the financial statement: For the first loan, the listing of other debts is apt to be relied upon more and given more weight than it would be after a satisfactory repayment experience. Although the lender would naturally want to know whether his borrower has since made other loans, it seems generally accepted that the lender's own experience will be the decisive factor. The financial statement is, in fact, an automatic amenity— simply one of the listed items which a credit manager or loan officer should have executed and placed in the file...." "The Fraud Exception in Consumer Bankruptcy," 23 Stan.L. Rev. 735, 750 (1971).

rupt. The bankrupt testified that he did not discharge the Sears debt because the $402.00 that he received was not sufficient to satisfy that obligation. In light of the above facts, this explanation is reasonable and negates any intent to defraud. In addition, it is questionable whether Beneficial intended to make payment of the Sears debt a condition for granting the loan. If Beneficial had intended that any part of the loan was to be used to satisfy the Sears obligation, it could have made payment directly to Sears as it did with the aforementioned creditors. Beneficial's contention that it was unable to do so because it did not know the amount owing on the Sears obligation, is not persuasive. As previously indicated, the bankrupt's credit statement listed the outstanding indebtedness to only one (1) of the four (4) designated creditors—Town Finance; yet Beneficial was able to determine the amount owing to Michigan Bankard, Master Charge and Visa, and to make the appropriate payments. No explanation was offered as to why Beneficial did not follow the same procedure with respect to the Sears indebtedness.

An appropriate order to be submitted.