**In the Matter of Samuel Gerald NAPPI, Debtor.**

**U–AUTO LEASE, INC., Plaintiff,**

**v.**

**Samuel Gerald NAPPI, Defendant.**

**Bankruptcy No. 81–1594.**
**Adv. No. 81–489.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 13, 1983.

Richard A. Nielsen, Tampa, Fla., for plaintiff.

Albert I. Gordon, Tampa, Fla., for defendant.

MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding and the matter under consideration is the dischargeability, vel non, of a debt owed by the Defendant, Samuel Gerald Nappi to U-Auto Lease, Inc. (U-Auto), the Plaintiff in the above-styled adversary proceeding. The amount sought to be declared non-dischargeable is $11,200 based on the Plaintiff's claim that the Debtor obtained monies from the Plaintiff by false representations. U-Auto also charges that the Debtor willfully and knowingly defrauded the Plaintiff by selling a 1980 van belonging to U-Auto

and converting the proceeds to his own use. The evidence presented at trial reveals that the van was never owned by either the Debtor or U-Auto and, therefore, was never subject to conversion. Upon motion of the Debtor, the pleadings have been amended in order to conform to the evidence presented at trial. The sole question before the Court is whether the Debtor, by false pretenses, false representations or actual fraud, obtained money or property from U-Auto, thereby rendering the debt owed by the Debtor to U-Auto non-dischargeable pursuant to Bankruptcy Code § 523(a)(2)(A).

The facts relevant to the controversy as they appear from the record established at the final evidentiary hearing can be summarized as follows:

U-Auto was at the time pertinent to this transaction, engaged in the business of leasing motor vehicles to the public at large in Liverpool, New York. The Debtor is an individual who operated a retail and wholesale used car business under the name of University Auto Sales in Syracuse, New York. The parties engaged in a series of business dealings whereby U-Auto purchased certain autos to meet the Debtor's specifications and then, leased the newly acquired vehicles to the Debtor.

The first transaction between the parties relevant to the present controversy occurred in early 1979 when the Debtor sought to lease a 1979 Datsun 280ZX. U-Auto did not own such a vehicle, however, its general manager agreed to purchase the same and lease it to the Debtor on a closed-end lease arrangement for a fixed term of 24 months. In September, 1979, the Debtor approached the manager of U-Auto regarding the possibility of turning in the Datsun and using any credit due to the Debtor from the Datsun lease as a down payment toward the purchase of a Jaguar. In due course U-Auto purchased the Jaguar and the Debtor then leased the same from U-Auto although for reasons apparently beneficial to both parties, the Jaguar was originally titled in the Debtor's name, but in January, 1980, the title to the Jaguar was transferred from the Debtor to U-Auto.

On November 28, 1979 U-Auto and the Debtor entered into a third leasing agreement and it is this transaction which forms the basis of this present controversy. The record reveals that the Debtor was interested in leasing a 1980 customized Chevrolet van. This time, however, the parties agreed that the Debtor who had chosen a specific van would arrange the purchase and process the title in his name through his used car business. The total cost of the van was $11,200. U-Auto agreed to give the Debtor $9,900 and the Debtor agreed to provide the balance of the purchase price. On November 28, 1979, the parties signed a lease agreement and U-Auto issued and delivered a check for $9,900 to the Debtor. The Debtor, then endorsed the check and deposited the same into his bank account. The testimony reveals that on or about November 29, 1979, the Debtor learned that the van which he had intended to purchase was no longer available. He did not return the funds advanced by U-Auto but rather over the course of the next thirty days applied the funds to the payment of personal and business obligations. These are the relevant facts on which the claim of non-dischargeability of the debt owed by the Debtor is based.

Bankruptcy Code § 523(a)(2)(A) provides in pertinent part:

"(a) A discharge under section 727, 1141, 1328(b) of this title does not discharge an individual debtor from any debt—(2) for *obtaining* money . . . by—(A) false pretenses, a false representation or actual fraud . . ." (emphasis supplied)

It is well settled that courts narrowly construe exceptions to discharge against the creditor and in favor of the Debtor in light of the primary purpose of the bankruptcy laws. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Accordingly, it is the burden of the creditor to establish that the debt sought to be declared non-dischargeable falls within a statutory exception. *Beneficial Finance Co. of Michigan v. Lambert (In re Lambert),* 21 B.R. 23, 24 (Bkrtcy.E.D.Mich.1980). Within

the context of § 523(a)(2)(A), there must be proof of positive fraud, to wit: intentional fraud or acts involving moral turpitude. *Byrd v. Byrd (In re Byrd),* 9 B.R. 357, 359 (Bkrtcy.D.C.1981).

■ As noted above, the Debtor and U-Auto entered an agreement whereby the Debtor was to purchase a 1980 customized Chevrolet van with funds provided by U-Auto, process the title in the Debtor's name and eventually transfer the title to U-Auto. While it is evident that the Debtor received the Plaintiff's check and deposited the same into his bank account, it appears that the Debtor did not learn that the van was unavailable until after the funds were received and deposited. There is no evidence to support a finding that the Debtor gained possession of the Plaintiff's monies with an intent to use the same for any purpose other than to purchase the 1980 van. In the context of a claim of non-dischargeability pursuant to § 523(a)(2)(A), the fact that the Debtor subsequently applied the Plaintiff's funds to the payment of his personal obligations, is without legal significance. In light of the foregoing, the claim of non-dischargeability cannot be sustained.

A separate final judgment will be entered in accordance with the foregoing.