In re Archie K. SHIPE, Jr., Julia Ann Shipe, Debtors.

SUPER CONCRETE CORPORATION, Plaintiff,

v.

Archie K. SHIPE, Jr., Julia Ann Shipe, Defendants.

Bankruptcy No. 83–1–0169. Adv. No. 83–0495A.

United States Bankruptcy Court, D. Maryland, at Rockville.

June 27, 1984.

Charles Kirchman, Wheaton, Md., for debtor/defendants.

Mitchell Stabbe, Washington, D.C., for plaintiff.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter comes before the court upon the filing by Super Concrete Corporation ("Super Concrete") of a complaint to determine the dischargeability of a debt owed Super Concrete by Archie K. Shipe and Julia Ann Shipe ("the Shipes"), the debtors herein. After hearing and upon submission of briefs, this court makes the following determination.

K & J Associates ("K & J"), a business wholly owned by Archie. K. Shipe, incurred a debt with Super Concrete in the amount of $11,137.96 for materials sold to K & J. Super Concrete placed liens on the properties at several jobs of K & J in an attempt to satisfy this indebtedness. The debtor's attorney and brother-in-law, Mr. Richard A. Micheel, owned Lifetime Pools, which was the general contractor for these jobs. The placing of these liens resulted in the freezing of funds due Mr. Micheel's company as well as funds due K & J. Therefore, the Shipes and Mr. Micheel drew up an assignment in favor of Super Concrete to induce Super Concrete to release its liens. Super Concrete subsequently released its liens, and the assignment was filed among the land records of Montgomery County, Maryland, and a copy of the assignment is attached as an appendix to this opinion.

The two operative paragraphs of the assignment provided:

WHEREAS, Parties of 2nd part have the above described property listed for sale with a registered real estate broker, and expect to sell the acreage and improvements in the near future, and in consideration of releasing all liens by the party of the first part, then the Parties of the 2nd part assigns all their rights to the monies owed to the party of the 1st part amounting to $11,137.96 coming from the proceeds of the settlement of the above stated property.

It is understood that Richard A. Micheel will be handling the settlement of this property and the parties of the 2nd part hereby authorizes Richard A. Micheel, Attorney to honor this assignment, and to withhold $11,137.96 from the monies at the time of settlement and pay to the party of the first part.

The property was subdivided and sold, but Mr. Micheel did not act as the settlement attorney for the sales, and the Shipes failed to turn over $11,137.96 of the proceeds to Super Concrete as provided in the assignment. Instead, the Shipes applied the proceeds that they received from the sales of the property to the payment of other creditors and to the purchase of another property. The Shipes filed a joint Chapter 7 petition in bankruptcy with this court on February 3, 1983, and scheduled Super Concrete as having an unsecured, disputed claim in the amount of $11,137.96.

Super Concrete contends that the Shipes' debt is nondischargeable on three distinct grounds. First, the plaintiff asserts that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) for obtaining an extension, renewal, or refinance of credit at the time of execution of the assignment by false pretenses, a false representation or by actual fraud. Second, the plaintiff argues that the debt is nondischargeable because at the time of the real estate settlement the debtors obtained money (the proceeds of the sale assigned to Super Concrete) by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). Third, the plaintiff asserts that the debtors obtained the money by fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4).

Examining the plaintiffs' first contention, that the debt is nondischargeable because at the time the debtors executed

the assignment they had no intention of honoring it, the court finds that the plaintiff has not met its burden of demonstrating that the Shipes had no intention to repay at the time the assignment was made. One of the primary purposes of the bankruptcy law is to relieve honest debtors of the burden of their indebtedness and to provide them with a fresh start so that they can become productive members of society. *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 218, 62 L.Ed. 507 (1918). The court must therefore strictly construe the exceptions to discharge set forth in 11 U.S.C. § 523(a)(2). *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Accordingly, the creditor bears the burden of establishing that the debt sought to be declared nondischargeable falls within the statutory exception. *In re Cross*, 666 F.2d 873, 880 (5th Cir.1982); *Matter of Nappi*, 29 B.R. 233, 234 (B.C.M. D.Fla.1983); *In re Lambert*, 21 B.R. 23, 24 (B.C.E.D.Mich.1980).

■ Where a creditor seeks an exception to discharge based upon allegations of fraud, misrepresentation, or false pretenses, the creditor has the burden of establishing his claim by clear and convincing evidence. *Matter of Richmond*, 29 B.R. 555, 558 (B.C.M.D.Fla.1983); *In re Newmark*, 20 B.R. 842, 853 (B.C.E.D.N.Y.1982); *In re Neumann*, 13 B.R. 128, 130 (B.C.E.D. Wis.1981).

■ In this case, the plaintiff alleges that at the time the debtors executed the assignment they obtained an extension, renewal, or refinance of credit by false pretenses, a false representation, or by actual fraud. False representations and false pretenses encompass statements that depict *current or past facts* falsely. *In re Todd*, 34 B.R. 633, 635 (B.C.W.D.Ky.1983), *citing* Black's Law Dictionary 541 (Rev. 5th Ed. 1979); *In re Simpson*, 29 B.R. 202 (B.C. N.D. Iowa 1983); *Matter of Shepherd*, 13 B.R. 367 (B.C.S.D. Ohio 1981); *In re Buttendorf*, 11 B.R. 558 (B.C.Vt.1981). A false representation requires an express

misrepresentation, whereas false pretenses involves an implied misrepresentation or conduct intended to create and foster a false impression. *Matter of Weinstein*, 31 B.R. 804 (B.C.E.D.N.Y.1983); *In re Newmark*, 20 B.R. 842 (B.C.E.D.N.Y.1982); *In re Schnore*, 13 B.R. 249 (B.C.W.D.Wis. 1981); *In re Pommerer*, 10 B.R. 935 (B.C. Minn.1981).

The type of "fraud" necessary to satisfy an objection under this section has been defined as:

"... positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. Such a construction of the statute is consonant with ... the intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency."

*Matter of Reinstein*, 32 B.R. 885, 888 (B.C. E.D.N.Y.1983) *citing Neal v. Clark*, 95 U.S. 704, 709, 5 Otto 704, 24 L.Ed. 586 (1887).

■ Generally, a cause of action for fraud will not lie for misrepresentations as to future promises or facts, but an exception exists where, at the time the promise was made, the promissor had the intent not to perform the promised act. *In re Turner*, 12 B.R. 497, 7 B.C.D. 1119, 1121 (B.C.N. D.Ga.1981) *citing Shear v. Nat'l Rifle Assn. of America*, 606 F.2d 1251, 1259 (D.C.Cir.1979). *See also, Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781, 796 (5th Cir.1978); *Bisset v. Ply-Gem Industries, Inc.*, 533 F.2d 142, 145 (5th Cir.1976). The plaintiff in this case seeks to base Count I of this dischargeability complaint upon this narrow exception to the general rule.

To sustain an objection based upon § 523(a)(2)(A), an objecting creditor must show the existence of the following elements:

(1) the debtor made the (express or implied) representations;

(2) that he knew at that time were false;

(3) that he made them with the intention of deceiving the creditor;

(4) that the creditor relied on the representations; and

(5) that the creditor sustained the alleged loss and damage as a result of the representations having been made.

*In re Carneal,* 33 B.R. 922, 925 (B.C.E.D. Va.1983); *In re Newmark,* 20 B.R. 842, 853–54 (BC.E.D.N.Y.1982); *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978); *Matter of Nelson,* 561 F.2d 1342, 1346 (9th Cir.1977). The objecting creditor must establish the existence of each of these elements by clear and convincing evidence. *Brown v. Buchanan,* 419 F.Supp. 199 (E.D. Va.1975).

The court finds from the testimony elicited from the debtors and Mr. Micheel that the Shipes did not enter into the assignment with the intent of dishonoring it at a later date. Mr. Micheel testified that if he had been the settlement attorney for the subsequent sales, he would have considered the assignment binding upon the Shipes. No evidence of a deliberate scheme to dupe Super Concrete into accepting a worthless assignment was adduced at trial. The only evidence produced by the plaintiff of fraud, false pretenses, or a false representation at the time of the assignment was the failure of the Shipes to turn over the proceeds at a later date. Generally, the mere breach of a promise to pay does not support a finding of fraud. *In re Todd,* 34 B.R. 633, 636 (B.C.W.D.Ky.1983); *In re Simpson,* 29 B.R. 202 (B.C.N.D.Iowa 1983); *In re Boese,* 8 B.R. 660 (B.C.S.D.1981); *In re Brooks,* 4 B.R. 237 (B.C.S.D.Fla.1980). The court holds, therefore, that the plaintiff has not met its burden of proving by clear and convincing evidence that the Shipes obtained an extension, renewal, or refinance of credit at the time of execution of the assignment by false pretenses, a false representation, or by actual fraud.

Similarly, the plaintiff has failed to meet its burden with respect to proving that at the time of the real estate settlement the debtors obtained the proceeds by false pretenses, a false representation, or actual fraud. Both debtors testified at trial and during their depositions that they fully intended to repay Super Concrete. The debtors stated that the first $12,000 of the proceeds that they obtained from the sales of the property was used to pay the creditors who first appeared demanding payment, including the Internal Revenue Service. The debtors and the settlement attorney for the second sale from which proceeds were paid to the debtors testified further that they believed that the assignment need not be honored. The settlement attorney, James G. Kolb, testified that he had even discussed the matter with the then incumbent head of the real estate section of the county bar association, who purportedly opined that the assignment need not be honored at settlement. The plaintiff produced no evidence of any fraud occurring at the time of settlement other than the mere fact that Super Concrete was not paid at that time.

Given the paucity of evidence adduced by the plaintiff, the court holds that the plaintiff has failed to establish the requisite elements of Count II by clear and convincing evidence.

Under Count III, the plaintiff asserts that the debt is nondischargeable under § 523(a)(4) because the Shipes obtained the money assigned to Super Concrete by fraud or defalcation while acting in a fiduciary capacity. The predecessor to this section, section 17(a)(4) of the Bankruptcy Act, was interpreted by the Supreme Court to require a technical trust relationship rather than one implied from contract. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). The Court construed this section to require that the trust relationship exist prior to the transaction creating the debt. *Id.*

Subsequent Supreme Court decisions have looked to state law in determining whether a prior trust relationship existed

between the contracting parties. *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957) (whether trust established is a question of state law). In *Hamby v. St. Paul Mercury Ins. Co.*, 217 F.2d 78 (4th Cir.1954), the Court of Appeals held that the case law in Virginia clearly made the realtor-client relationship fiduciary in nature. *Id.* at 80. *See also, Matter of Dloogoff*, 600 F.2d 166, 169–70 (8th Cir. 1979) (debt dischargeable because Nebraska Supreme Court construed law not to establish an express trust); *Decker-Ruhl Ford v. Ford Motor Credit*, 523 F.2d 833, 837 (8th Cir.1975) (by executing assignment, dealer became fiduciary with respect to assigned funds collected); *Allen v. Romero*, 535 F.2d 618, 621 (10th Cir.1976) (licensing statute for construction contractors construed to impose fiduciary duties); *Contra, Schlecht v. Thornton*, 544 F.2d 1005, 1007 (9th Cir.1976) (fiduciary relationship not established by Oregon law imposing trusteeship on employer).

The Maryland Court of Appeals considered the question of whether an agreement to pay money out of the proceeds of the sale of land created a trust relationship in *Johnson v. Johnson*, 40 Md. 189 (1874). In *Johnson*, the Maryland Court of Appeals determined that an agreement much like the assignment executed in the present case created a trust relationship between the assignor and assignee. *Id.*, 40 Md. at 198. The plaintiff has cited numerous other decisions in which state courts have held that an assignment created a trust relationship, but this court need only determine whether a trust relationship is created under Maryland law. Given the near identity of the assignment in the present case and the assignment in *Johnson*, this court concludes that Maryland law makes the assignor-assignee relationship fiduciary in nature. The Shipes' failure to honor the assignment upon receipt of the proceeds clearly constitutes a defalcation of their fiduciary responsibilities, therefore the debt of $11,137.96 (with interest from February 26, 1981, the date of settlement) is nondischargeable under § 523(a)(4).

Counsel for the plaintiff shall prepare an order in accordance with this memorandum, together with a supporting interest worksheet.

APPENDIX

Law Offices

RICHARD A. MICHEEL

Federal Bar Building

Washington, D.C. 20006

B72–0702

ASSIGNMENT

This Assignment made this 27th day of October, 1978, between SUPER CONCRETE CO., of Washington, D.C., party of the first part and K & J ASSOCIATES, INC., ARCHIE K. SHIPE and JULIA ANN SHIPE, of Brookville, Maryland, Parties of the second part is as follows:

WHEREAS, Party of the 2nd part has an indebtedness with the Party's of the 1st part in the amount of Eleven Thousand One Hundred and Thirty Seven Dollars and Ninety Six Cents ($11,137.96), arising from concrete delivered to several jobs of K AND J ASSOCIATES, INC. up to October 15, 1978.

WHEREAS, Party of the 1st part has placed liens on several jobs of K & J ASSOCIATES, and K & J is desirous of having an immediate release on all jobs these liens have been placed, and or any jobs party of the first part is entitled to place a lien upon.

WHEREAS, Parties of 2nd part own in fee simple 36 acres, with improvements in Montgomery County at 1901 Brighton Dam Road, Brookville, Maryland 20729, and recorded in among land records of Montgomery County, Maryland in Liber 492 at Folio 397 and being more particularly described in accordance with a plat of Survey prepared by MCA Engineering Corporation, Rockville, Maryland on September 1974.

WHEREAS, Parties of 2nd part have the above described property listed for sale with a registered real estate broker, and expect to sell the acreage and improve-

ments in the near future, and in consideration of releasing all liens by the party of the first part, then the Parties of the 2nd part assigns all their rights to the monies owed to the party of the 1st part amounting to $11,137.96 coming from the proceeds of the settlement of the above stated property.

It is understood that Richard A. Micheel will be handling the settlement of this prop-erty and the parties of the 2nd part hereby authorizes Richard A. Micheel, Attorney to honor this assignment, and to withhold $11,137.96 from the monies at the time of settlement and pay to the party of the first part.

SIGNED AND SEALED THIS 27th day of October, 1978 by the party of the first part and the parties of the second part, and agreed to by Richard A. Micheel, Attorney

SUPER CONCRETE CORPORATION
/s/ Murray Simpson J. President
　　MURRAY SIMPSON—Party of 1st part
/s/ Richard A. Micheel
　　RICHARD A. MICHEEL, ATTORNEY

/s/ Archie K. Shipe, Jr.
　　ARCHIE K. SHIPE, Party of 2nd part
/s/ Julia A. Shipe
　　JULIA ANN SHIPE, Party of 2nd part

State of Maryland

County of Montgomery: ss

On this 27th day of October, 1978, before me, the undersigned officer, personally appeared ARCHIE K. SHIPE and JULIA ANN SHIPE, known to me to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purpose therein contained.

In witness whereof, I hereunto set my hand and official seal.

　　/s/Jerry E. Jarosik
　　Jerry E. Jarosik
　　Notary Public

My Commission expires: 7-1-82
　　[SEAL]