Argued March 6, affirmed as modified April 26, petition for
rehearing denied May 23, 1972

RUEGSEGGER ET UX, *Respondents, v.* McCARLEY
ET AL, *Appellants.*
496 P2d 214

*Howard I. Bobbitt,* Portland, argued the cause and filed the briefs for appellants.

*George M. Joseph,* Portland, argued the cause for respondents. With him on the brief were Bemis, Breathouwer & Joseph, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

TONGUE, J.

This is an action for damages and restitution by the purchasers of a house against the builder-seller of the house, who failed to convey clear title. As a

result, the purchaser was required to pay off a construction mortgage with a balance of $19,395.73, in addition to payment of the purchase price in full in the sum of $23,866.

Defendants' answer alleged, among other things, that defendants had filed a petition for voluntary bankruptcy, in which plaintiffs were listed as creditors and in which plaintiffs' claim was one from which a discharge would be a release, and prayed that plaintiffs' action be abated until a determination of that issue.

Plaintiffs' reply denied that defendants' obligation to plaintiffs was dischargeable in bankruptcy and alleged that at some unspecified date defendants represented that upon payment in full they would convey title free and clear of all encumbrances; that in reliance thereon plaintiffs paid defendants in full, but that "said representations were false and defendants knew then and there that they were false"; that the property was in fact subject to a mortgage and that defendants "had no intention to discharge the same, but intended to and did convert said funds to their own use." At the conclusion of the trial defendants filed a demurrer to this reply, which the court took under advisement.

The facts of this domestic financial tragedy are not complex. Plaintiffs saw a model home advertised by defendants and on April 12, 1967, signed a contract under which defendants agreed to build a similar house for them. The contract provided that upon payment in full of the sum of $23,866 defendants would deliver marketable title. The contract also provided that defendants might obtain a mortgage loan to secure funds for construction and that the plaintiffs

might elect to assume the balance of that loan in part payment of the contract. At that time, however, there was no mortgage on the property and plaintiffs testified that they did not read those contract provisions and were not told of defendants' intention to get a mortgage loan.

Defendants then obtained a construction mortgage loan for $19,000 and started to build the house. The house was completed on schedule in August 1967 and plaintiffs moved in. At that time they were making monthly payments to defendants, as provided in the contract.

On or about January 1, 1968, plaintiffs made a payment to defendants of $16,182, which they had withdrawn from savings for that purpose, leaving a balance of only $666.40 yet to be paid on the contract. At that time plaintiffs had no further conversation with defendants, although they had previously told defendants of their intent to pay off the contract at an early date and to take title free and clear.

That payment of $16,182 was not applied by defendants to the payment of the mortgage on the property, but instead went into the firm's general account and was used for other purposes. There was no evidence, however, that defendants were in financial difficulty at that time. By letter dated January 22, 1968, defendants sent plaintiffs a statement of the amount of the contract balance as of the date of the January payment, but made no reference to the mortgage.

Plaintiffs then continued to make monthly payments in February, March, April and May and on June 4, 1968, made a final payment in the sum of $187.89. At that time, and also by letter dated June 5,

1968, defendants informed plaintiffs that they were preparing a deed and were ordering a policy of title insurance "to show the property is free and clear of any encumbrances" and which would be delivered when received. Defendants told plaintiffs that this would take from 60 to 90 days because of "paper work."

As time went on, however, no deed or title policy was received and plaintiffs were unsuccessful in attempts to reach defendants by telephone. By letter dated January 24, 1969, however, defendants notified plaintiffs that they had "set up an escrow account" to "complete the closing transactions on [the] house." They also prepared escrow instructions as set forth by letter dated February 6, 1969, but never deposited the money as referred to in that letter and necessary to pay off the mortgage, because no such funds were then available. At that time the mortgage may have been in default.

In April 1969 plaintiffs heard that defendants were in financial trouble and went to an attorney, who was then successful in securing delivery of a warranty deed, dated as of June 15, 1968, with no reference to any mortgage. That deed had never been previously delivered in escrow or to plaintiffs.

In April 1969 plaintiffs were also notified by the holder of the mortgage that it was in default. They were then required to assume payment of the mortgage to prevent it from being foreclosed. On November 13, 1969, plaintiffs filed this action.

After considering the testimony in a trial before the court, without a jury, the trial court entered the following findings of fact, among others:

"V

"At the time of plaintiffs' final payment of

approximately $16,000.00, Ken McCarley told plaintiffs that they would receive a deed and title policy in two or three months because of paper work and did not disclose mortgage to Lincoln Savings & Loan. Ken McCarley thereupon caused said moneys to be deposited to the general account of Ken McCarley, Inc., and was subsequently disbursed for other purposes than to apply on mortgage to Lincoln Savings & Loan.

## "VI

"The statements made to plaintiffs by Ken McCarley at time of receiving final payment, were false, were known to be false, were material, were made with intent that they be relied on by plaintiffs, and were relied on by plaintiffs.

"* * * * *

## "VIII

"The indebtedness to these plaintiffs was not discharged in bankruptcy of defendants Ken H. McCarley and Gladys C. McCarley."

Based upon these findings judgment was entered against defendants for the sum of $19,395.73, representing the mortgage balance as paid by plaintiffs in order to clear title to the property, for which they had already paid defendants in full in the sum of $23,866. Defendants appeal.

Defendants' first and second assignments of error are that the trial court erred in the foregoing findings of fact and in its conclusion of law that the debt of defendants to plaintiffs was not dischargeable in bankruptcy.

Both parties have treated that question to be whether the debt was not dischargeable because of the provisions of Section 17(a)(2) of the Bankruptcy Act, 11 USC § 35(a)(2), as a "liabilit(y) for obtaining of

money or property by false pretenses or false representations," rather than as a fraud claim under Section 67 of that Act, 11 USC § 107. At the time of the filing of defendants' petition in bankruptcy, plaintiffs were free to seek a determination of that question in the state courts. See Cowans, Bankruptcy Law and Practice § 930 (1963 ed). Since then the Act has been amended to require that such a contention be raised in the Federal Bankruptcy Court. 11 USC § 35(c).

Plaintiffs contend that defendants obtained the payment of over $16,000 by "false representations," rather than by "false pretenses," and make no contention that the elements required to prove that money was obtained by false representations are substantially different than the elements required in Oregon to prove, as common law fraud, that money was obtained by false representations. See 8 Remington on Bankruptcy §§ 3319, 3320 (6th ed). Cf. Cowans, Bankruptcy Law and Practice §§ 442, 443, 444 (1963 ed). Thus, plaintiffs cite no authorities contrary to defendants' contention, citing *Amort v. Tupper*, 204 Or 279, 286, 282 P2d 660 (1955), that in order for plaintiffs to prevail in such a case it must appear:

"* * * (1) That Defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that Plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with reasonable certainty, and all of them must be found to exist. The absence of any one of them is fatal to recovery * * *."

More specifically, defendants contend that a contention that money was obtained by false representa-

tions, fraud cannot be "predicated" upon broken promises, which are "inherent in bankruptcy," with the result that failure to perform a promise is not fraud unless the person making the promise, at the time he made it, had no intention of performing, citing *Conzelmann v. N.W.P. & D. Prod. Co.*, 190 Or 332, 350-352, 225 P2d 757 (1950), and *Elizaga v. Kaiser Foun. Hospitals*, 259 Or 542, 487 P2d 870 (1971).

Plaintiffs contend, however, that *Conzelmann* and *Elizaga* are not only distinguishable, but support plaintiffs' position in this case.

In *Conzelmann* we held (at p 351):

"To amount to a fraudulent representation sufficient to constitute actionable fraud, the intention not to perform must exist at the time the promise to do something in the future is made, and such an intent formed later and carried into effect is insufficient."

and (at p 352):

"A fraudulent intent not to perform a promise may not be inferred as existing at the time the promise is made from the mere fact of nonperformance. Other circumstances of a substantial character must be shown in addition to nonperformance before such inference of wrongful intent may be drawn."

Similarly, in *Elizaga* we held (at p 68):

"A failure to perform a promise is not a basis for an action for fraud. Making a promise, however, with the knowledge that it probably cannot be performed or with reckless disregard whether the promissor can or cannot perform can be the basis for an action of fraud. Prosser, Torts, supra, at 745."

We also held in that case (at p 67) that the fact that the defendant in that case "persisted in its non-

disclosure" after learning of plaintiff's intent to accept its promise of a job could be considered as evidence that at the time when defendant promised the job to plaintiff it then knew that the program would probably terminate in a few months, with the result that no job would be available and that defendant would not be able to keep its promise.

Thus, plaintiffs contend in this case that here, as in *Elizaga,* there was a "nondisclosure of material facts" and a reckless disregard for plaintiffs' rights and that, as in *Conzelmann,* there were also the following "other circumstances of a substantial character" as evidence of defendants' wrongful intent not to perform their promise to defendants:

"* * * Non-disclosure of the mortgage, deposit of the money in the firm's general account, failure to apply the $16,000.00 received in January to the mortgage, stating that steps were actually being taken to deliver a free and clear insured title when no steps were being taken, preparation of a deed which did not recite the existence of the mortgage, knowledge of a worsening financial condition without disclosure of it, preparation of wholly useless escrow instructions. * * *"

■ The difficulty with plaintiffs' contention, however, is that there is no evidence whatever to prove that when defendants, by the original contract of sale dated April 12, 1967, promised to deliver good title upon the receipt of payment in full they did not at that time intend to keep that promise. The evidence is also clear that when plaintiffs made the payment of $16,000 to defendants on January 1968 no representation whatever was made by defendants to plaintiffs. It is well established that in order to constitute the "obtaining of money or property by false pre-

tenses or false representations," within the meaning of Section 17(a)(2) of the Bankruptcy Act, the fraud by such means must occur at or prior to the time the money or property is obtained. 133 ALR 440, 446 (Annot.) and cases cited therein.

Plaintiffs concede that the trial court made an "immaterial error" in its finding of fact that representations were made by defendants at the time of the "final payment of $16,000." Plaintiffs say, however, that this "makes no difference, for the record is clear that as part of the receipt of the final payment [of $187.89 on June 4, 1968] the defendants McCarley did make the alleged representations concerning the deed and title insurance."

■ It necessarily follows, however, that the original promise made by defendants to convey clear title, as made in April 1967, even if subsequently relied upon by plaintiffs when they later paid $16,000 to defendants, cannot be regarded as a false or fraudulent representation, for lack of evidence that it was made either with an intent at that time not to perform or that at that time it was made recklessly and without regard to defendants' ability to perform. Indeed, at that time there was no mortgage on the property and there was no evidence that defendants did not then intend to pay or could not then pay any future construction mortgage loan on that property. The subsequent nondisclosure of the mortgage, the deposit of the $16,000 in the firm's general account and the failure to apply it to the mortgage cannot (and apparently are not contended to) provide sufficient evidence to establish that in April 1967 defendants had such a fraudulent intent.

In *Elizaga,* on the contrary, at the time defendant promised the job to plaintiff it then knew that

the program would probably be terminated so that it would be unable to perform its promise. In *Conzelmann,* the court found, as in this case, that the alleged "other circumstances" were not sufficient as the basis for an inference of a wrongful intent at the time of making the promise complained of in that case.

It also follows that since the only other representations made by defendants to plaintiffs were the representations made by defendants on June 4, 1968, when the final payment of $187.89 was paid, that plaintiffs are confined as a basis for recovery to the representations made at that time. We fully agree with plaintiffs' contention that there was sufficient evidence to establish the necessary fraudulent intent in the making of those representations at that time. The problem, however, involves the amount of damages, or to be more specific, the amount of money obtained from plaintiffs by those false representations.

If this were an action for damages for fraud, plaintiffs might not be confined to a claim of $187 in damages if they were able to prove, for example, that had they then known of defendants' fraud they could then have taken steps that would have made possible the recovery of previous payments because of the existence of assets then available as a basis for such recovery. No such evidence was offered in this case and, in any event, plaintiffs' sole contention in this case has been that defendants "obtained money by false representations" within the meaning of Section 17(a)(2) of the Federal Bankruptcy Act, 11 USC § 35(a)(2).[1]

---

[1] Thus, plaintiffs state the question to be decided in this case as follows:

"If the individual defendants were liable to the plaintiffs, was that liability subject to discharge under Section 17(a)(2) of the Bankruptcy Act, 11 USC § 35?"

■ This does not mean, of course, that plaintiffs were not entitled to judgment against defendants for the full amount of the debt owed by them to plaintiffs in the sum of $19,395.73, in accordance with the terms of the judgment as entered by the trial court in this case. It does mean, however, that because, according to the evidence in this case, the only money obtained by defendants by false representations was the final payment, in the sum of $187.89, as paid on June 4, 1968, there is no basis in the record to support the conclusion of law by the trial court that any amount in excess of that payment of $187.89 was a debt not discharged in bankruptcy.

■ This is an extremely unfortunate case and we have studied the entire record carefully, as well as the applicable law, before coming to this reluctant conclusion. Unfortunately, debts resulting from broken promises are dischargeable in bankruptcy in the absence of proof that money or property was obtained by false pretenses or by false representations, or that the facts were such as to come within other provisions of the Bankruptcy Act not applicable in this case.

■ If plaintiffs' complaint had alleged that the entire $16,000 was obtained by false "pretenses," under Section 17(a)(2) of the Bankruptcy Act (11 USC § 35(a)(2)) rather than by false "representations," or if plaintiffs' complaint had alleged an embezzlement by a fiduciary, under Section 17(a)(4) of that Act (11 USC § 35(a)(4)), based upon allegations that at the time of receiving payment of the $16,000 defendants fraudulently concealed the existence of the mortgage as well as their intent to divert that payment to purposes other than payment of the mortgage, this might be a different case. Indeed, we have recognized

that under some circumstances the recovery of a judgment by a plaintiff may be affirmed on a theory different from that under which the case was tried, provided that sufficient facts were both pleaded and proved to support recovery on such a theory. See *Chaney v. Fields Chevrolet Co.*, 258 Or 606, 484 P2d 824 (1971).[②]

The principal difficulty with this case, however, is not so much that such facts were not pleaded as it is that plaintiffs offered no evidence that at the time of the $16,000 payment the defendants were in financial difficulty and offered no evidence that defendants did

---

[②] In an attempt to bring this case within the scope of Section 17(a)(2) as a one involving money obtained by false representations, plaintiffs cite Gregory v. Pierce, 186 Iowa 151, 172 NW 288 (1919), as holding that the *concealment* of a mortgage amounted to a *"continuing misrepresentation"* by which defendants acquired and kept control of plaintiffs' money. As we read that case, however, the court (at p 291) rejected the contention of a continuing misrepresentation. In any event, the distinction between the pleading and proof of affirmative representations, as distinct from concealment, is well established in Oregon, even though the legal effect may be the same and even though a representation in the nature of a "half truth," plus concealment of the remaining truth, may constitute fraud. See Heise v. Pilot Rock Lbr. Co., 222 Or 78, 352 P2d 1072 (1960); Musgrave v. Lucas, 193 Or 401, 238 P2d 780 (1951); Palmiter v. Hackett, 95 Or 12, 185 P 1105, 186 P 581 (1920); Fitzhugh v. Nirschl, 77 Or 514, 151 P 735 (1915); and Clearwater v. Forrest, 72 Or 312, 316, 143 P 998 (1914).

Plaintiffs also cite Wells v. Blitch, 182 Ga 826, 187 SE 86 (1936), which held (at p 90) that "a false representation may consist in obtaining the money of another upon the faith that it will be used for the purpose for which the trust was extended" and that to receive money without a present intention of using it as directed is a "false representation of one's intention." In that case, however, it appears (at p 88) that it was alleged that at the time of a sale of land for $1,500 in cash defendant affirmatively "promised your petitioner" that the money would pay off an existing loan debt and that he failed to do so. Thus, it was properly held in that case that plaintiff had obtained the money by either "false pretenses" or "false representations."

We have also read other cases cited by plaintiffs and find that they are not in point.

not then intend to pay off the mortgage, so as to be able to convey good title to plaintiffs.

In any event, and perhaps for good reason, plaintiffs chose to proceed both in the trial court and in this court on the theory that defendants obtained money by false representations within the meaning of Section 17(a)(2) of the Bankruptcy Act. 11 USC § 35(a)(2).

For all of these reasons, we are constrained to hold that under the evidence in this case the only money received by defendants by false representation, so as to result in a liability that was not dischargeable in bankruptcy under Section 17(a)(2) of that Act, was the sum of $187.89.

This disposition of the case makes it unnecessary to consider defendants' additional assignments of error and contentions.

It should also be noted that the attorneys who represented plaintiffs in this court were not the same as those who represented plaintiffs on trial.

Modified.