**In re Deborah Kay BEAVER, Debtor.**

**HERITAGE BANK, Plaintiff,**

v.

**Deborah Kay BEAVER, Defendant.**

**Bankruptcy No. 680–06031.**
**Adv. No. 680–6077.**

United States Bankruptcy Court, D. Oregon.

Sept. 30, 1980.

524

Jerry E. Gastineau, Medford, Or., for defendant.

Ronald K. Cue, Ashland, Or., for plaintiff.

## OPINION

MICHAEL R. HOGAN, Bankruptcy Judge.

On January 16, 1980, Deborah Kay Beaver filed a voluntary petition in bankruptcy.

Heritage Bank, a creditor of the debtor, alleges in this proceeding that a debt owing to it by the debtor is nondischargeable in accordance with the provisions of § 523(a)(2) A and B of the Bankruptcy Code, 11 U.S.C. § 523(a)(2) A and B.

On July 30, 1979, Heritage Bank loaned $4,660.37 to the defendant–debtor. Defendant executed a promissory note for that sum and also granted plaintiff a security interest in her automobile, the title to which was then held by General Motors Acceptance Corporation (GMAC). Defendant was to pay the existing balance on a loan from GMAC secured by her car and provide the title to the vehicle to plaintiff as security for the loan.

Defendant failed to pay off the loan to GMAC and did not provide plaintiff with title to the vehicle.

Defendant also has failed to pay any part of the sum owed to plaintiff on the promissory note. Plaintiff then declared the note to be in default and declared the full sum immediately due and payable.

On December 26, 1979, plaintiff filed an action against defendant for collection of the loan in the Circuit Court of the State of Oregon for Jackson County, Case No. 79–4075–L–2, which proceeding is now stayed pursuant to 11 U.S.C. § 362(a).

Plaintiff contends that defendant obtained the loan from plaintiff on a false pretense or by making a false representation in that defendant agreed to pay the existing balance on her loan from GMAC with the proceeds of the note and to provide plaintiff with the clear title to her vehicle as security for the loan, which she did not do.

Plaintiff further contends that because defendant stated on a credit application that she was employed by Delah Timber Products, when in fact she had been terminated, defendant obtained the loan through the use of a written statement respecting her financial condition that was materially false and which defendant executed with the intent to deceive, upon which plaintiff relied in extending credit.

On August 15, 1980, a trial was held in Medford, Oregon, the Honorable Michael R. Hogan presiding. At said trial, the following facts were established:

1) On July 27, 1979, defendant filled out and signed a consumer credit application for a loan from Heritage Bank on which she stated she was employed by Delah Timber Products and had been so employed for approximately one year.

2) Defendant's intention in obtaining a loan from Heritage Bank was to refinance an automobile loan from GMAC and consolidate other existing debts. Defendant called GMAC and the other creditors to obtain loan balances and the figures she received from her creditors are the figures she placed on the Heritage Bank credit application.

3) On July 30, 1979, plaintiff loaned the sum of $4,660.37 to defendant for which defendant executed a promissory note payable to plaintiff in the sum of $4,660.37 plus interest thereon at the rate of 13% per annum from July 30, 1979 until paid. Defendant also granted to plaintiff a security interest in her car.

4) Defendant agreed to pay the balance of the existing debt to GMAC secured by her automobile with part of the proceeds of the note and to give to plaintiff the title to her car to secure the loan.

5) Defendant paid some creditors with the loan proceeds. She tendered a sum of money to GMAC, which was returned to her as insufficient to pay the balance of her existing loan. When GMAC returned the money to defendant, she pre–paid four or five payments to GMAC.

6) When defendant was unable to obtain the title to her car because she was $600.00 short, defendant called Heritage Bank and informed them. She was advised by plaintiff to get a lawyer.

7) Defendant did not pay the existing debt to GMAC and did not provide plaintiff with the title to her car.

8) Defendant has not paid any sums owing on the promissory note.

Plaintiff argues that defendant's agreement to pay the balance on the GMAC loan and provide plaintiff with clear title to her vehicle as security for plaintiff's loan, and her subsequent failure to do so constitutes false pretenses or a false representation.

However, in order to constitute the obtaining of money or property by false pretenses or false representations within the meaning of the Bankruptcy Code, the fraud by such means must occur at or prior to the time the money or property is obtained. *Ruegsegger v. McCarley*, 262 Or. 157, 496 P.2d 214 (1972).

In *Conzelmann v. Northwest Poultry and Dairy*, 190 Or. 332, 225 P.2d 757 (1950), the Oregon Supreme Court held:

> "To amount to a fraudulent representation sufficient to constitute actionable fraud, the intention not to perform must exist at the time the promise to do something in the future is made, and such an intent formed later and carried into effect is insufficient." 225 P.2d at p. 765

> .     .     .     .     .

> "A fraudulent intent not to perform a promise may not be inferred as existing at the time the promise is made from the mere fact of nonperformance. Other circumstances of a substantial character must be shown in addition to nonperformance before such inference of wrong-

ful intent may be drawn." 225 P.2d at p. 765

■ The record reveals no fraud at or prior to the time the loan was made to defendant nor any bad faith in defendant's agreement with plaintiff. There is no evidence that defendant's promise was made with the intent not to perform. To the contrary, the evidence indicates that defendant made a good faith effort to obtain the title to her car for plaintiff. She tendered a sum of money to GMAC which she thought from prior phone calls to GMAC was sufficient to pay that loan in full but which was returned as insufficient to pay the loan in full. She then made four or five car payments in advance. When unable to obtain the title to her car, defendant attempted to make alternate arrangements with plaintiff to no avail. These facts do not support a finding of fraudulent intent on the part of defendant.

Plaintiff also contends that defendant's statement on a credit application that she was employed by Delah Timber Products, when in fact, she had been terminated, bars discharge pursuant to 11 U.S.C. § 523(a)(2)B.

■ However, to bar discharge, the fraud involved must be the type involving moral turpitude or intentional wrong. *In Re Taylor*, 514 F.2d 1370 (9th Cir. 1975).

The main evidence presented at trial regarding defendant's termination date was defendant's own testimony. Defendant testified that she was employed at Delah Timber in August, 1978. She injured her arm in September, 1978 and was off work for one week. She then worked for another month and a half. She returned to the doctor and was put on disability. Defendant returned to light work in mid–December and worked until January, 1979, at which time she was told there was no light duty available. Defendant received workman's compensation until July, 1979, at which time she was released to work by the treating physician. Defendant testified that the promissory note to plaintiff was signed prior to her release to go back to work. She further testified that when re-

leased to work in July, 1979, she returned to Delah Timber and was told she had been terminated. She testified that she had no knowledge that she had been terminated at the time she filled out the credit application.

The only other evidence regarding defendant's termination date was a termination slip introduced into evidence without foundation, which lists defendant's termination date as January 24, 1979. However, there was no testimony to explain the context of or circumstances surrounding that termination slip. Defendant testified that she had never seen it before. It was undisputed by plaintiff that defendant received workman's compensation benefits for several months after the date she last worked.

Therefore, there is considerable ambiguity as to when defendant was actually terminated. Assuming without deciding that defendant had been terminated at the time she filled out the credit application, there was no evidence that defendant was aware she had been terminated.

■ The creditor has the burden of proving that the debtor intentionally and purposefully attempted to deceive the creditor in obtaining a loan. *In Re Taylor, supra.* Plaintiff in the case at bar has failed to carry that burden.

Section 523(a)(2) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2) provides in relevant part:

"Exceptions to Discharge:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive."

I find that plaintiff has failed to prove that defendant obtained money from plaintiff by making a false representation or through the use of a written statement respecting defendant's financial condition on which plaintiff reasonably relied in extending credit that was materially false and that defendant executed with intent to deceive.

Accordingly, plaintiff's claim against defendant is not excepted from defendant's discharge in bankruptcy.

At the time of trial, the parties stipulated that the prevailing party is entitled to attorney's fees. Therefore, defendant is allowed thirty days to submit an affidavit substantiating reasonable · attorney's fees. Plaintiff is allowed fifteen days to respond.

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.