In the Matter of Maurice S. TURNER, Debtor.

Margaret H. THOMAS, Plaintiff,

v.

Maurice S. TURNER, Defendant.

Bankruptcy No. 79–0357A.
Adv. No. 80–0138A.

United States Bankruptcy Court,
N. D. Georgia.

July 10, 1981.

Peter J. Anderson, Atlanta, Ga., for plaintiff.

Robert W. Hassett, Atlanta, Ga., for defendant.

## STATEMENT OF FACTS

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Debtor Maurice S. Turner (Defendant) filed a petition under Chapter 7 of the Bankruptcy Code on December 21, 1979. On February 28, 1980, Margaret H. Thomas (Plaintiff) filed an adversary proceeding objecting to the discharge of Defendant's debt to her. The Plaintiff alleges that the Defendant fraudulently promised to marry her and thereby induced her to lend $31,300.00 to a corporation in which the Defendant owned 100% of the stock. This indebtedness is evidenced by a note which the Defendant's corporation gave to the Plaintiff and which the Defendant personally guaranteed. At the time of the alleged promise the Plaintiff knew that the Defendant was married to another woman.

The Plaintiff maintains that the alleged promise amounts to "false pretenses, a false representation, or actual fraud" contemplated by § 523(a)(2)(A) of the Bankruptcy Code and that the debt is therefore nondischargeable. The Defendant argues that

even if the court finds that he promised to marry the Plaintiff in order to induce her to lend him the money, the debt is dischargeable because it is based on an unenforceable promise upon which fraud cannot be predicated and because all of the elements of fraud, which the Plaintiff must prove, are not present. The Defendant has filed a motion for summary judgment.

## QUESTION PRESENTED

The issue raised by the instant motion is whether the Defendant's alleged promise to marry the Plaintiff, when the Plaintiff knew he was already in fact married, in order to induce the Plaintiff to lend him more than $30,000.00, constitutes fraud as contemplated by § 523(a)(2)(A) of the Bankruptcy Code.

## CONCLUSIONS OF LAW

The Defendant's argument for summary judgment is four-fold:

(1) a promise to marry when the promisor is already married is against public policy and unenforceable;

(2) the promisee may not reasonably rely on such an unenforceable promise and therefore there is no fraud;

(3) the Bankruptcy Code should be liberally construed in favor of giving the debtor a fresh start;

(4) fraud must be predicated on an existing fact.

In order to be successful on a motion for summary judgment, the movant must establish that no genuine issue as to any material fact exists and that he is entitled to a judgment as a matter of law. Fed.R.

Civ.P. 56(c). *Olympia Werke Aktiengesellschaft v. General Electric Co.,* 470 F.Supp. 966, 967 (W.D.Va.1979). In considering the motion, the court must view the facts of the case in a light most favorable to the party opposing the motion, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Percival v. General Motors Corp.,* 400 F.Supp. 1322, 1323 (D.Mo.1975), aff'd 539 F.2d 1126, 1129 (8th Cir. 1976).

■ This controversy focuses on § 523(a)(2)(A) of the Bankruptcy Code [11 U.S.C. § 523(a)(2)(A)]:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for obtaining money, ... by—

(A) false pretenses, a false representation, or actual fraud, ...

■ Fraud has historically been a basis for nondischargeability of debts in bankruptcy. Section 523(a)(2)(A) of the current Bankruptcy Code is derived from § 17(a)(2) of the prior Bankruptcy Act.[1] "[T]he phrase 'false pretenses or false representations' ... has been a part of section 17 since the Bankruptcy Act of 1898 .... The section was derived from parallel provisions in the Bankruptcy Act of 1867 ... providing that debts created by fraud were not dischargeable." *Wright v. Lubinko,* 515 F.2d 260, 269 (9th Cir. 1975). The phrases "false pretenses" and "false representations" technically may have slightly different meanings.[2] However, courts have con-

---

1. 11 U.S.C. § 35(a)(2) (Repealed 1978).

2. False pretenses, a statutory crime, ... consists in most jurisdictions of these elements: a false representation of a material present or past fact which causes the victim to pass title to his property to the wrongdoer, who (a) knows his representation to be false and (b) intends thereby to defraud the victim. Black's Law Dictionary (5th ed. 1979). A "false representation" in order to be actionable must consist of a statement of fact which is untrue, ... made with intent to defraud and for the pur-

pose of inducing another to act upon it, and he must have in fact relied on such statement and must have been induced thereby to act to his injury or damage. *Id.,* quoting *Household Finance Corp. v. Christian,* 8 Wis.2d 53, 98 N.W.2d 390, 392. One judicial attempt to distinguish the two is found in *Davison-Paxon Co. v. Caldwell,* 115 F.2d 189, (5th Cir. 1940) *cert. denied,* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941): "In deliberately chosen words the Congress indicates a difference between false pretenses and false representations. The latter may appropriately mean express misrepresen-

sistently held that in order for § 17(a)(2) or its predecessors to bar a discharge, the plaintiff must prove actual, or positive fraud.[3] *See Abbott v. Regents of the University of California*, 516 F.2d 830 (9th Cir. 1975); *Wright v. Lubinko, supra; Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1877). Therefore, the addition of the phrase "or actual fraud" as a basis for nondischargeability under the 1978 Code merely codifies prevailing prior case law applicable to the terms false pretenses and false representations.[4]

"Actual fraud" is any deceit, artifice, trick [or] design ... the intention and successful employment of any cunning, deception, or artifice used to circumvent or cheat another. It is something said, done, or omitted by a person with the design of perpetrating what he knows to be a cheat or deception."[5]

The Defendant argues that fraud may not be based on a promise to marry when the promisor is already married because such a promise is unenforceable at law and, therefore, the promisee could not have reasonably relied upon it. The Court notes at the outset that the Plaintiff does not contest the Defendant's contention that the promise is unenforceable. The Plaintiff does not seek to enforce the promise by this adversary proceeding. Rather, she maintains that the Defendant's alleged promise

amounts to false pretenses, false representations or actual fraud contemplated by § 523(a)(2)(A).[6] Thus, her action is in tort, not contract; it depends not upon the agreement between the parties but rather upon an alleged deliberate misrepresentation of fact. *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958). The Supreme Court in *National Bank & Loan Co. of Watertown v. Petrie*, 189 U.S. 423, 425, 23 S.Ct. 512, 513, 47 L.Ed. 879 (1903) stated that

The right not to be led by fraud to change one's situation is anterior to and independent of the contract .... The fraud is a tort. Its usual consequence is that, as between the parties, the one who is defrauded has a right, if possible, to be restored to his former position.

Although there are cases holding otherwise, the prevailing view is that "one who fraudulently misrepresents himself as intending to perform an agreement is subject to liability in tort whether the agreement is enforceable or not." *Channel Master, supra*, quoting Prosser on Torts 565 (4th ed. 1971). The action for misrepresentation is maintainable because

[T]he policy which invalidates the promise is not directed at cases of dishonesty in making it, and ... [the promise]

---

tations. 'False pretenses' more appropriately refer to implied representations, or conduct intended to create and foster a false impression." 115 F.2d at 193 (Sibley, J., dissenting). A difference between "false representations" and "false pretenses" is also suggested by *Ruegsegger v. McCarley*, 262 Or. 157, 496 P.2d 214 (1972). *But cf. Citizens & Southern National Bank v. Thomas*, (N.D.Ga., 1981). 12 B.R. 765, —— B.C.D. ——, —— C.B.C. ——.

**3.** At least one court has held that "false pretenses" and "false representations" must be express rather than implied from the conduct of the debtor. *Davison-Paxon Co. v. Caldwell, supra* note 2. The case has not been generally followed. *See In re Black*, 373 F.Supp. 105 (E.D.Wis.1974).

**4.** "Subparagraph A is intended to codify current case law ... which interprets fraud to mean actual or positive fraud rather than fraud implied in law." 124 Cong.Rec. H 11,096 (daily

ed. Sept. 28, 1978) (remarks of Rep. Edwards); 124 Cong.Rec. S 17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). These statements clarify an inconsistent and possibly misleading statement in the Senate and House Reports which inaccurately refer to the term "actual fraud" as a "new ground" for nondischargeability. S.Rep.No.95–989, 95th Cong., 2d Sess., 78 (1978); H.Rep.No.95–595, 95th Cong., 1st Sess., 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The statements of Rep. Edwards and Sen. DeConcini are the last expression of congressional intent on the point and therefore represent the more reliable construction to be placed on Section 523(a)(2)(A).

**5.** Black's Law Dictionary. (5th ed. 1979) "Actual fraud consists in any kind of artifice by which another is deceived.... [and] implies moral guilt." Ga.Code Ann. § 37–702 (1979).

**6.** 11 U.S.C. § 523(a)(2)(A) (1979).

may still be reasonably relied on even where it cannot be enforced. . . . [T]he tendency is clearly to treat the misrepresentation action as a separate matter from the contract. *Id.*

The tort action was maintainable where the contract was within the Statute of Frauds, *Pao Chen Lee v. Gregorian*, 50 Cal.2d 502, 326 P.2d 135 (1958); *Channel Master, supra*; where the promise was without consideration, *Lampesis v. Comolli*, 101 N.H. 279, 140 A.2d 561 (1958), and where enforcement was barred by the Statute of Limitations, *Fidelity-Philadelphia Trust Co. v. Simpson*, 293 Pa. 577, 143 A. 202 (1928); and where the promise falls within the parol evidence rule, *Kett v. Graeser*, 241 Cal. App.2d 571, 50 Cal.Rptr. 727 (1966).

In *Kidder v. Evans*, 111 Ga.App. 484, 142 S.E.2d 269 (1965) an investment broker sued a competitor and a customer for fraudulent conspiracy to misrepresent the customer's financial position and to induce the broker to accept the customer's worthless checks. The defendants argued that violation of Regulation T of the Federal Reserve Board was conduct expressly declared to be against the public policy of the United States, and that therefore, as a matter of law, the plaintiff had no right to recover. Rejecting the defendant's argument, the court said:

> A defendant in a fraud action cannot assert as a defense that the transaction induced by fraud was illegal or against public policy. The doctrine barring recovery for fraud where the parties are in pari delicto is based on the principle that to give the plaintiff relief would contravene public morals and impair the good of society. Hence, it should not be applied in a case in which, to withhold relief would, to a greater extent, offend public morals. 142 S.E.2d at 273.

The Defendant has cited *Gay v. Grace*, 433 F.2d 14 (5th Cir. 1970) and *Adamson v. Maddox*, 111 Ga.App. 533, 142 S.E.2d 313 (1965), for the proposition that there is no fraud because, the promisee may not reasonably rely on an unenforceable promise. These cases are factually distinguishable from the case at bar. In *Gay*, the promise was unenforceable because essential terms were not agreed upon. In *Adamson*, the court held that fraudulent misrepresentation could not be found where the contract was unenforceable because of the *plaintiff's* lack of authority to execute the contract, due to the expiration of his agency. Both of these cases deal with the enforcement of void promises, while the case *sub judice* does not.

■ A Georgia case which is more to the point is *Symmes v. Rollins*, 39 Ga.App. 53, 146 S.E. 42 (1928). That case contained a fact situation somewhat similar to the instant case. There the defendant obtained various sums of money from the plaintiff pending an engagement to marry. The plaintiff testified that these sums were advanced to the defendant because of the engagement to marry and because of her belief in his express purpose and intent to marry her. Upon discovering that he did not intend to marry her, the plaintiff accepted his note for the amount of money he had obtained from her. In holding that the debt was not discharged by bankruptcy, the court stated:

> Where a contract is induced by the actual, moral fraud of one of the parties, his liability for property obtained under the contract may be enforced according to the terms of the contract, or the defrauded party may waive the contract and sue in tort for damages on account of the fraud. In the first event the liability of the debtor under the terms of the contract itself is a contractual liability, and discharge in bankruptcy releases him therefrom. In the latter event the liability of the debtor is one arising in tort, for property obtained by false pretenses, and a discharge in bankruptcy does not release him therefrom. 39 Ga.App. at 53. 146 S.E. at 43.

The law will not allow the Defendant to use the unenforceable promise to marry to induce the plaintiff to lend him more than $30,000.00 and then shelter himself behind public policy. The policy of not enforcing marriage contracts where one of the parties

is married was never intended "as an instrument to immunize fraudulent conduct." *See Channel Master, supra.*

The Court agrees with the Defendant's contention that a primary purpose of the Bankruptcy Code is to give the debtor a fresh start. *In re Knight,* 421 F.Supp. 1387 (M.D.La.1976), *aff'd* 551 F.2d 861 (5th Cir. 1977); *In re Dolnick,* 374 F.Supp. 84 (N.D. Ill.1974). However, "Congress intended that the honest debtor be exonerated in bankruptcy—not the dishonest." *In re Oxford Investment Co.,* 246 F.Supp. 651, 653 (S.D.Cal.1965). "A ... discharge is refused to the dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future." *Pugh v. ADCO, Inc.,* 329 F.2d 362 (5th Cir. 1964).

Finally, the Defendant submits that fraud must be predicated on a fact existing at the time the promise is made. However,

[t]he view generally taken is that if the person making the statement as to a future event is guilty of actual fraudulent intent, and makes this misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representation. 37 Am.Jr.2d Fraud and Deceit § 59.

 Generally a cause of action for fraud will not lie for misrepresentations as to future promises or facts, but an exception exists where, at the time the promise was made, the promisor had the intent not to perform the promised act. *Shear v. National Rifle Ass'n of America,* 606 F.2d 1251 (D.C.Cir.1979). "False promise is an intentional tort...." *Fredonia Broadcasting Corp., Inc. v. RCA Corp.,* 569 F.2d 251 (5th Cir. 1978). A promise is actionable fraud only when the promisor had a positive intent not to perform his promise, or made the promise without a present intent to perform it. *Bisset-Ply-Gem Industries, Inc.,* 533 F.2d 142 (5th Cir. 1976). *Wojciechowski v. Amoco Oil Co.,* 483 F.Supp. 109 (E.D.Wis.1980). "[I]n order to recover for misrepresentation, there must, in general, be a misrepresentation of a present existing or past fact, not of a future promise ... [but] an exception to this rule exists where one makes a future promise in 'bad faith,' that is, without intention of performing it at the time the promise was made." *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son,* 467 F.Supp. 830 (E.D.Mich.1979).

This exception to the "futurity" rule has been adopted by the Georgia Courts. *Cone Mills Corporation v. A.G. Estates, Inc.,* 377 F.Supp. 222 (N.D.Ga.1974). Although the purported representations are promissory in nature, the prevailing authority excepts a situation in which fraud is predicated on future promises made with the present intention not to perform. *Id.* See *Nixon v. Brown,* 223 Ga. 579, 157 S.E.2d 20, 23 (1967); *Sutton v. McMillan,* 213 Ga. 90, 95, 97 S.E.2d 139 (1957). "[W]hen the failure to perform the promised act is coupled with the present intention not to perform, fraud in the legal sense is present." *Hinson v. Hinson,* 221 Ga. 291, 292, 144 S.E.2d 381, 383 (1965).

After consideration of the arguments of counsel and the record in the light most favorable to the plaintiff, the court concludes that the motion for summary judgment should be denied and that a trial proceed on the issue of dischargeability of the $30,000.00 debt. As a matter of law, a breach of promise to marry made by a party, who is already married at the time of the promise, may be the basis of actual fraud in the context of § 523(a)(2)(A) of the Bankruptcy Code.