In re ROBERTO'S, INC., Debtor.

Frances K. LOWE, Plaintiff,

v.

ROBERTO'S, INC., Defendant.

In re Robert KLINE, Debtor.

Frances K. LOWE, Plaintiff,

v.

Robert KLINE, Defendant.

Bankruptcy Nos. 81–01294–BKC–SMW, 81–01295–BKC–JAG.

Adv. No. 81–0499–BKC–JAG–A.

United States Bankruptcy Court, S. D. Florida.

March 19, 1982.

Dennis King, Miami, Fla., for plaintiff.

Barbara L. Phillips, Miami, Fla., for debtor.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

### INTRODUCTION

Plaintiff, FRANCES K. LOWE, has in this consolidated adversary proceeding, sought to have the debt owed her declared nondischargeable, pursuant to Sec. 523(a)(2)(A) of the Bankruptcy Code. Plaintiff's adversary complaint names two debtors, ROBERTO'S, INC., a Florida corporation, and ROBERT KLINE, individually, and as the principal and sole stockholder of ROBERTO's, INC.

It is the contention of the Plaintiff that she was fraudulently induced by the two Defendants, ROBERTO'S, INC., and ROBERT KLINE, to enter into ten separate contracts for instruction in social dancing.

The consolidated adversary complaint (CP # 12, 13) set forth three counts. In Count 1, a claim is made that both debtors, through actual fraud, false pretenses and false representations, obtained monies in the amount of $139,837.00, paid for dance instructions.

The remaining two counts of said adversary complaint have been withdrawn. These counts charge the Defendants with negligent and tortious breach of contract, and violations of Florida's Little F. T. C. Act.

Count 1 of Plaintiff's complaint was the only issue tried before the Court on the dischargeability under Sec. 523(a)(2)(A) of the Bankruptcy Code.

An ancillary issue, relating to the piercing of the corporate veil, was raised, and that, together with the dischargeability under Sec. 523(a)(2)(A) of the Bankruptcy Code was presented and tried before a jury.

The Court need not address these ancillary issues, since the threshold issue facing the Court is the Motion made by the Defendants, ROBERTO'S, INC., and ROBERT KLINE, for a judgment in behalf of the Defendants, on the nondischargeability issue under Sec. 523(a)(2)(A) of the Bankruptcy Code, after the Plaintiff had completed her case and rested.

### STATEMENT OF FACTS

Debtor, ROBERTO'S, INC., Defendant, filed a voluntary Chapter 11 on August 14, 1981. (CP # 1). The Chapter 11 proceeding was converted on motion by the debtor in possession to a Chapter 7 on December 4, 1981 (CP # 24a).

Debtor ROBERT KLINE filed a Chapter 7 petition on August 14, 1981. (CP # 1).

On December 2, 1981, Plaintiff, FRANCES K. LOWE, filed a consolidated adversary proceeding to determine the dischargeability of her claim under Sec. 523(a)(2)(A). (CP # 12, 13).

The evidence presented at trial before the Court and jury reflects the following:

The Plaintiff is a divorced woman, aged 56, who has resided in the State of Florida for the past 4½ years. She is college educated and has raised 3 children to adulthood; two of the children live in this area. Plaintiff has various other relatives who are local residents. MRS. LOWE is not employed, but has income from a private trust account and escrow account.

The relationship between the parties begins back in April of 1978 when, invited by a neighbor who was taking dance lessons, MRS. LOWE attended a party hosted by the Defendant dance studio. Subsequently, she returned and took a complimentary lesson at the Boca Raton studio, which was one of three dance studios then operated by the Defendants.

Plaintiff thereafter purchased an introductory enrollment agreement and began a contractual relationship with the dance studio, which spanned two years, with ten contracts in the total amount of $139,837.00. (Pl.Ex. 1–10). Plaintiff paid $103,721.00. (Pl.Ex. 11).

The contractual agreements between the parties terminated in May, 1980, when Plaintiff voluntarily ceased her instructions and never returned to the dance studio. Seventeen months later, the Defendants filed voluntary bankruptcies under the Bankruptcy Code.

It is the Plaintiff's contention that the Defendants should not be entitled to discharge her particular debt, due to alleged fraudulent representations made as to the Plaintiff's ability to become a good dancer, and false pretenses in the form of flattery. The Plaintiff further contends that the Defendants took advantage of her by "feeding her vanity", just prior to the execution of the ten dance contracts. Plaintiff also claims that the Defendants exerted pressure on her prior to signing the various contracts. It is Plaintiff's final contention that the sale of subsequent contracts prior to the completion of earlier contracts constitutes fraud.

Plaintiff's case in chief consisted of four witnesses: a records custodian for a bank; the former accountant of the Defendant corporation; a dance instructor, who is presently giving instruction to the Plaintiff; and the Plaintiff, herself. The Plaintiff has introduced into evidence 18 exhibits.

The first witness, MARGARET M. BERRY, a records custodian at the bank where the corporate Defendant maintained an account, testified that the corporate Defendant had a checking account at her bank. (Pl.Ex. 14)

IRA CATZ, C.P.A., the second witness, was the former accountant of the debtor corporation, and testified concerning an unaudited computer printout of the corporation's financial activity for a 10 month period in 1979. (Pl.Ex. 15).

Plaintiff's next witness, RON TROY, who is a partner in a local dance studio known as REFLECTIONS BALLROOM, testified that when the Plaintiff first came to his dancing school her abilities were "average to above average", indicative of some prior dance instruction. MR. TROY went on to express an opinion as to MRS. LOWE'S present level of skill and her activity in recent dance competitions.

The last witness called was MRS. LOWE. The testimony reflected that MRS. LOWE had executed ten contracts. (Pl.Ex. 1–10). With the exception of the introductory contract, each contract bore identical standard language as to the terms and conditions of performance, differing only in the specific price and number of hours for each contract.

The Plaintiff's testimony further reflected that initially she regarded the dance studio as her home, and the employees as "one big happy family". During her two year association with the Defendants, Plaintiff acknowledges that she, along with other students and instructors of the school, made trips to Nassau, Bahamas, Paris, France, London, England, Caracas, Venezuela, and New Orleans, Louisiana, at no additional cost. Plaintiff admits that the trips were first class, and that she freely participated in all of the fringe benefits offered by the dance studio, such as weekly afternoon parties, evening formals, along with attending the studio for instruction 3–4 times per week, for one-two hours at a visit.

It is Plaintiff's testimony that she was familiar with the terms and conditions of each contract, and that at no time was she forced to execute same.

The documentary evidence introduced by Plaintiff reflects that Plaintiff engaged in competition tournaments, both before and after leaving the studio of the Defendants, and that Plaintiff was a first place winner in said contests. (Pl.Ex. 16–18).

Plaintiff contends that the actions of the Defendants, in the promotion and sales of the various dance contracts, amounts to "false pretenses, false representation or ac-

tual fraud", as is contemplated by Section 523(a)(2)(A) of the Bankruptcy Code, and that the debt is therefore nondischargeable.

At the conclusion of Plaintiff's case, the Defendants made several motions directed to both the issue of dischargeability under Sec. 523(a)(2)(A) of the Bankruptcy Code and to the jury trial on the issues of common law fraud and damages.

The Court having fully considered all of the testimony of the witnesses and documentary evidence, and having heard argument of respective counsel on the motions of the Defendants, found that the Plaintiff had wholly failed to meet her burden to make a prima facie case as is required under Section 523(a)(2)(A) of the Bankruptcy Code, and judgment was entered in behalf of both Defendants, ROBERTO'S, INC., and ROBERT KLINE. Even though the Court is convinced of the correctness of its decision concerning the dischargeability, it further considered the Defendants' Motion for directed verdict in the jury trial of common law fraud and that is treated by separate judgment granting directed verdict.

## CONCLUSIONS OF LAW

■ The Defendants' motion for judgment must be considered and tested in the light most favorable to the party in opposition to the motion. *Percival v. General Motors Co.*, 400 F.Supp. 1322, 1323 (D.Mo., 1978), Aff'd 539 F.2d 1126, 1129 (8th Cir., 1976), *In re Maurice Turner*, 12 B.R. 497, 7 BCD 1119, 1119 (Bkrtcy.N.D.Ga., 1981).

■ The question has been raised as to what standard of evidence is required. It was Plaintiff's contention that the appropriate evidentiary standard is a "preponderance of evidence". The Defendants maintained that the Federal Bankruptcy Law requires that the evidence be "clear and convincing". The Court holds and does so rule, that the evidentiary standard of proof required on a .dischargeability action under Section 523(a)(2)(A) is evidence which is "clear and convincing". *Brown v. Buchanan*, 419 F.Supp. 199, 201 (D.C.E.D.Va., 1975), *In re Stone*, 11 B.R. 209, 211 (Bkrtcy. D.SC., 1981).

Even assuming that the Plaintiff is correct, and giving the Plaintiff the benefit of all reasonable inferences, the Plaintiff has failed to establish and prove the elements essential and required under Section 523(a)(2)(A).

A review of Section 523(a)(2)(A) of the Bankruptcy Code provides:

"(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

■ for obtaining money, . . . by—
(A) false pretenses, a false representation, or actual fraud, . . . "

■ Not all types of fraud are included within the exception of Section 523(a)(2)(A), but *only* those which involve the obtaining of money, property or services by false pretenses, false representations or actual fraud. The fraudulent intent contemplated by Section 523(a)(2)(A) is fraud in fact, as distinguished from fraud at law, and involves bad faith or moral turpitude. (*Colliers 15th Ed.*, Paragraph 523.09(4), 1980.)

■ The elements required in establishing a prima facie case of fraud under both Section 17(a)(2) of the former Bankruptcy Act and Section 523(a)(2)(A) of the Bankruptcy Code are:

"(1) The debtor made the representations;

(2) That at the time he knew they were false;

(3) That he made them with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on such representations; and

(5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

*In re Stewart*, 10 B.R. 214, 4 C.B.C.2d 387, 390 (Bkrtcy.C.D.Cal., 1981); *In re Harlan*, 7 B.R. 83, 85 (Bkrtcy.D.Ariz., 1980); *In re Gillespie*, 11 B.R. 167, 169 (Bkrtcy.D.Or.,

1981), *In re Trewyn*, 12 B.R. 543, 546 (Bkrtcy.W.D.Wis., 1981); *In re Houtman*, 568 F.2d 651 (9th Cir., 1978).

■ The Plaintiff in challenging the dischargeability of the Defendants' debt bears the burden of proof. Bankruptcy Rule 409, *In re Green*, 5 B.R. 247 (Bkrtcy.N.D.Ga., 1980).

■ The Court has reviewed the testimony of the witnesses, and the documentary evidence, and concludes, that as a matter of law, Plaintiff has failed to sustain her burden of proving the elements required to constitute a prima facie case of fraud under Section 523(a)(2)(A) of the Bankruptcy Code.

It must affirmatively appear from the evidence that such representations were knowingly and fraudulently made, and that the Plaintiff relied on the statements. *Colliers*, infra. at 523–40. The Court does not find that the Defendants' alleged representations made to the Plaintiff were in fact false, or made with the purpose and intent of deception. Plaintiff has relied upon the Florida case of *Vokes v. Arthur Murray Dance Studios*, 212 So.2d 906 (2 D.C.A.Fla., 1968) to support her claim of fraud. Unlike the facts presented in the *Vokes* case, there is no evidence before the Court that the successive sales of dance contracts were procured through concealment of the student's true ability, compounded by false progress reports. Further distinguishing the *Vokes* case, no evidence has been offered that the subsequent sales of dance contracts were not justified, due to the Plaintiff's "slow and awkward progress". (*Vokes*, infra, p. 909).

There is no evidence that the Defendants held themselves out to be anything other than in the business of selling dance instruction. It may well be true that the Defendants used sales tactics known in the trade as "puffing", but the acts of the Defendants, as alleged by the Plaintiff, do not rise to the level of conduct required to have a debt declared nondischargeable under Section 523(a)(2)(A). Plaintiff has not shown that she lacked the mental capacity to understand the contracts, or that she was misinformed or coerced into signing same.

The Court offers no opinion on the wisdom of the Plaintiff in spending the time and money she has in learning the art of ballroom dancing.

■ The Court is mandated to construe objections to dischargeability of a debt strictly in order to effectuate the "fresh start" doctrine of the Bankruptcy Code. *In re Iannelli*, 12 B.R. 561, 564 (Bkrtcy.S.D. N.Y., 1981), citing *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

The Plaintiff has a heavy burden when objecting to dischargeability. In this case that burden has not been met. Therefore the Court has granted the Defendants' motion for judgment, and determines that the debt of the Plaintiff is dischargeable.

This Memorandum shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rule 921(a). A separate Judgment incorporating these Findings and Conclusions is being entered this date.